(No. 37273.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* CLINTON SMITH, Plaintiff in Error.

*Opinion filed March 22, 1963.*

McCoy, MING & LEIGHTON, of Chicago, (GEORGE N. LEIGHTON, of counsel,) for plaintiff in error.

WILLIAM G. CLARK, Attorney General, of Springfield, and DANIEL P. WARD, State's Attorney, of Chicago, (FRED G. LEACH and E. MICHAEL O'BRIEN, Assistant Attorneys General, and EDWARD J. HLADIS and WILLIAM L. CARLIN, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE UNDERWOOD delivered the opinion of the court:

Defendant, Clinton Smith, was found guilty, following a bench trial in the criminal court of Cook County, of the crime of rape and sentenced to 15 years imprisonment. He now seeks to set aside the judgment of conviction on the ground that the proof was insufficient to establish his guilt beyond a reasonable doubt.

The complaining witness testified that on November 8, 1959, she had left home about 1:45 A.M. and gone by cab to the Corvette Lounge to see her girl friend whose brother owned the Corvette located at 81st and Cottage Grove Avenue in Chicago; that from the tavern she was driven homeward by her girl friend's brother about 4:30 A.M. She lived at 6611 Langley Avenue but was discharged at 66th and Cottage Grove; while walking west on 66th towards Langley she was stopped by defendant who grabbed her by the arm, and proceeded to pull her to the corner of 66th and Langley, about seven doors away. Complainant asked him where her husband was, and the defendant replied that he knew where her husband was and that she was to go with him. She stated that she began to cry when defendant grabbed her, as she was frightened; that she broke away from defendant and walked fast towards her house, three doors away, and had mounted three of the nine steps leading to her home when defendant pulled her from the steps. She then asked defendant to leave her alone, whereupon he told her to shut up and come with him, striking her above the right eye and causing the eye to bleed. She stated that she did not scream nor try to attract attention because of her fear of the defendant.

Prosecutrix further testified that defendant then pulled her down Langley, across the street and into an alley running west from Langley near 67th Street. She wore a black fur coat, a black dress with buttons, a jacket with buttons

and normal undergarments. After pulling her into the alley, defendant tore her clothes off and threw them on the ground. He pushed her to the ground upon her coat and had intercourse with her. When a car entered the alley she was told to be quiet and not to yell, and the defendant wrapped her coat around her and then walked her around to the side of the garage. After the car passed, he led her back to the place of the first occurrence, and a second act of intercourse then took place. Complainant stated that during this time her eye was bleeding heavily and that she wiped it on the defendant's coat. During the second act defendant gave his name to complainant and she in turn told him her name. After completing the second act defendant took her purse and obtained therefrom certain identification cards and her driver's license.

Immediately following defendant's departure prosecutrix went to the apartment of Mrs. Elsie Carter of 642 East 67th Street, which was in the building behind which the occurrences had taken place. Mrs. Carter testified that she had never seen complainant before, and that she appeared "tussled", her hat and coat were quite dirty, she was bleeding over the right eyebrow, and a piece of her brassiere was in her hand. The complaining witness informed Mrs. Carter that she had been raped and needed help, whereupon Mrs. Carter gave her some assistance in her home and then called the police.

Complainant further testified that in the afternoon of November 12, 1959, a person who identified himself as "Clint" phoned her and told her that he would again call that night. She informed her husband who in turn called the police. Later, while two policemen and her husband were present defendant called again, apologizing for hitting her and tearing off her clothes, and stated he wanted to see her again. He called again that same evening and told her that her driver's license and identification cards were in her mailbox. When she went to the mailbox she found the

cards there. He called again on the following day and while the policemen and her husband were present talked to her approximately 37 minutes. Again on November 14, 1959, in the evening, defendant called and talked to her for approximately 24 or 25 minutes, and on this occasion the policemen who were present during this call left and went to the Walgreen Drug Store at 63rd and Cottage Grove where they arrested defendant, who was still in a phone booth. A search of his person in this drug store revealed a card which was identified as one of the cards which had been taken from complainant's wallet.

Officer Johnson stated that defendant, while in the squad car, said he knew why he was being arrested and stated, "Well, I'm the man you want, there is no need of my lying." At the home of defendant his overcoat with the blood stains on the lapel was found, and at the police station defendant admitted the substance of the charges. He signed a two-page written confession but at the time of the trial denied that certain answers were given by him.

Defendant testified in his own behalf, the essence of his testimony being that the intercourse was voluntary and consented to; he stated he had been at a tavern with friends, leaving about 3:45 A.M.; that a friend drove him to within three blocks of his home where he got out to go to a restaurant and get a sandwich to take home to his wife. Defendant saw a car stop and complainant alight therefrom; she waved to him and waited for him to catch up with her, although he had never seen her before; that he walked with her at her suggestion to her home; that she looked in the window and said her husband was home and they couldn't go in; that she started running down the stairs, tripped and fell and that he then helped her up and this accounted for the blood on his coat. He stated that she led him to the alley but prior thereto had asked if he wanted to go to a hotel with her. They walked down the alley and then she led him between two garages where she turned so that he

could take off her coat. He stated they had sexual relations once. He also stated she only took off her girdle and her coat. After they were finished a car came down the alley and she pulled him close to her; that she gave him her identification cards from her pocketbook and told him to call her. He helped her with her coat and girdle and offered to take her home but she refused and so he left alone.

Defendant stresses the fact that the complaining witness had been in a tavern in the early hours of the morning after having left her family; that she made no outcry immediately before, during or immediately after the time of the occurrence. Certain discrepancies in her testimony and Mrs. Carter's testimony concerning her appearance have been pointed out, and our attention is called to the fact that it was below freezing temperature and the ground was wet and cold on the night in question. It is defendant's theory that these matters show that there is a reasonable doubt as to his guilt of the crime of rape. Defendant also asks why the complaining witness did not go immediately to her home instead of reporting to Mrs. Carter's residence.

In the written statement signed at the police station by defendant he asserted that he grabbed her by the arm and walked her to a door and then some people coming out of a house saw them and complainant wanted to scream so he struck her on the face, lifted her up and walked her farther down the street to an alley located between 67th and 69th streets. He acknowledges that he tried to take her clothes off, and being unable to do so, tore them from her body and committed two acts of intercourse; that he stood her up and wiped the blood from her face with his coat. In his testimony defendant admitted signing the statement, stating that he had read it partly before he signed it, but that he was upset and nervous and had skimmed over it. He testified that he did not use certain terms that were included in the statement, but he did not deny its voluntary character.

Defendant contends he told the police there was only one act of intercourse and not two, and denied giving certain answers contained in the statement, testifying that he did not say that he "would sign the statement because it was true," which declaration is therein attributed to him.

The rules of law applicable to an assessment of the sufficiency of the evidence by a reviewing court are well settled and have been reiterated by us on numerous occasions. Where a case is heard by the trial court without a jury, the determination of the credibility of the witnesses and the weight to be accorded their testimony is for the judge to decide, and, unless the evidence can be said to be clearly insufficient, a reviewing court will not substitute its judgment for that of the trier of fact who observed the witnesses, heard them testify and was in a far better position than are we to determine where the truth lay. (*People v. West,* 15 Ill.2d 171; *People v. Reaves,* 24 Ill.2d 380.) We have carefully reviewed the entire record and are unable to agree with defendant's contention that the proof is so unsatisfactory as to require reversal. The confession here was voluntarily made, and defendant's only testimony minimizing its effect was that certain answers therein appearing were not as he gave them to the officers. These matters were for the trial court to determine, and his resolution of them against the defendant was warranted in view of the fact that defendant's testimony regarding alleged discrepancies in the statement was hardly of a convincing character. We have frequently said that a voluntary confession by a competent person is the highest type of evidence known to the law. *People v. Green,* 17 Ill.2d 35.

No reversible error appearing, the judgment of the criminal court of Cook County is hereby affirmed.

*Judgment affirmed.*