THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. LAWRENCE JENNINGS, Defendant-Appellant.

First District (5th Division) Nos. 83—0811, 84—1478 cons.

Opinion filed April 25, 1986.

1016

1018

James J. Doherty, Public Defender, of Chicago (Jeffrey M. Howard, Assistant Public Defender, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Patrick J. Foley, and Robert J. Prendergast, Assistant State's Attorneys, of counsel), for the People.

JUSTICE LORENZ delivered the opinion of the court:

In the early morning hours of June 15, 1982, Ann T. was raped while sleeping alone in her car in a parking lot of a local club. Following her detailed description of her assailant to the police, the defendant was apprehended approximately a block away from the scene of the assault. Defendant was taken to the hospital where the complainant was being treated and she positively identified him as her assailant.

After he was charged with rape and deviate sexual assault, the public defender was appointed to represent him. However, prior to trial he was represented by private counsel.

Following a jury trial, defendant was found guilty of rape, but innocent of deviate sexual assault. He was sentenced to 30 years' imprisonment. He appeals from that conviction urging that (1) the cumulative impact of the prosecutor's improper remarks during closing argument constituted reversible error; (2) the ineffective assistance of his trial counsel denied him due process to a fair trial; (3) the post-arrest identification by the victim at the hospital was improper; (4) under *Miranda*, he was denied his right to be free from self-incrimination; (5) there was insufficient physical or circumstantial evidence to prove him guilty beyond a reasonable doubt, and (6) the jury's verdicts finding him guilty of rape, but not guilty of deviate sexual assault were inconsistent, casting a doubt on the degree of certainty with which the jurors decided defendant's fate with respect to the rape charge. Defendant also petitioned the trial court for post-conviction relief which the trial court denied following a full hearing. Defendant appeals from the order denying the requested relief. In the interest of judicial economy and convenience, we consolidate both ap-

peals.

Defendant initially raises the issue of prosecutorial misconduct. Specifically, defendant argues that the cumulative impact of the prosecutor's disparaging remarks during closing argument deprived him of a fair trial by an impartial jury. Four categories of prosecutorial remarks have been isolated by defendant in claiming error. ·

■ The first set of remarks falling subject to defendant's objections are those that allegedly disparaged defense counsel and his representation of defendant. Defendant cites the instance during closing arguments when the prosecutor stated that any argument expressing the view that the sperm on defendant's pants was not probative was nothing but "ludicrous."

The record reveals that at defendant's trial, expert testimony from a microanalyst firmly established that sperm was present on defendant's pants. On cross-examination, defense counsel clearly sought to elicit from the witness testimony to the effect that there was no test to determine when the semen first appeared on defendant's pants. The State claims that defense counsel was at that point trying to establish a basis which would lend support to his ultimate premise in closing argument. The gist of that premise was that semen on defendant's pants was not probative of his guilt because the expert failed to say how long the semen stain was there.

Defense counsel's cross-examination of the expert witness clearly left the impression that defendant would later draw on the testimony concerning the impossibility of testing how long the semen had been on his pants to argue in closing that the question of guilt could not be decided on the presence of semen on his clothing. As such, the State sought to comment on the same in anticipation of defense counsel's remarks. We fail to see how this could have disparaged defense counsel and his representation of defendant. The prosecutor's remarks merely reflected the matter brought forth on cross-examination by defense counsel. That the State decided to comment on the same prior to allowing defendant to bring it up first in his closing argument was no more than a display of courtroom strategy of the sort normally engaged in by opposing parties at trial.

■ The next comments in the prosecutor's closing argument that defendant claims disparaged his defense dealt with consent as a possible defense. The extent of the prosecutor's remarks on consent, however, must be viewed in light of defense counsel's questions on cross-examination and the other evidence produced at trial.

The record shows that defense counsel himself injected consent as a possible defense when he asked the rape victim on cross-examina-

tion: "Isn't it a fact that you voluntarily spread your legs for him?" Defense counsel's cross-examination also probed deeply into the ability of the victim to observe her assailant, questions which are logically apt to lead a jury to infer that a misidentification as to defendant had occurred. The suggestions drawn from defense counsel's line of questioning, as the State has pointed out, gave rise to inconsistent defense postures: one based on misidentification, "I didn't do it" and the other based on consent, "I did it, but she agreed to it."

Furthermore, the evidence adduced at trial was in and of itself contrary to the notion of consent as a defense. Among other things, the evidence revealed that defendant bashed in the front passenger window with a metal bar to gain access to the inside of the car. After entering the vehicle, defendant choked the victim and pinned her on the front seat. As a result of being forced to lie on the front seat in broken glass with defendant on top during the rape, the victim sustained multiple cuts and scratches in an extensive area of her back. The testimony heard at trial also revealed that defendant ripped the victim's pants off of her, breaking their zipper in the process. The victim's pants, sweater, and T-shirt were all stained with blood. This evidence was corroborated by defendant when he admitted in his confession to raping the victim under these exact circumstances.

When read in context, the subject comments were no more an affront to the defense than any other remark constituting invited reply or fair comment on the evidence adduced at trial. The characterization of the aforementioned inherently conflicting theories of defense as "garbage" merely alluded to the worthlessness of such legal posture. The comment made by the prosecutor that "the ultimate theory of the rape appears to be that it was too dark to see whether she voluntarily spread her legs" clearly reflects both the tenor and insinuations made about the victim in open court. Likewise, the prosecutor's conclusory remarks characterizing consent as ugly, vulgar or ridiculous was not improper comment and fair in light of the evidence introduced at trial.

■ The next remark that defendant claims disparaged his defense concerned another issue raised on defense counsel's cross-examination of a witness. The record reveals that several questions posed by defense counsel indirectly suggested that the area surrounding the scene of the rape was akin to a low-grade red-light district. In response, the prosecutor warned the jury not to be fooled by questions attempting to make the victim look ugly. The obvious implication of defense counsel's questions was to attack the chastity of the victim. Since prostitution was irrelevant and clearly not in issue, the prosecu-

tor attempted to persuade the jury not to consider it. We agree with the State that, under the circumstances, the prosecutor's comments were reasonable and well within the bounds of proper closing argument.

■ The final remark claimed to have disparaged defense attorney concerned a prosecutorial statement made at the onset of rebuttal noting that defendant's closing argument raised nothing of value or substance. Given the nature of rebuttal arguments (an opportunity given plaintiff to respond to and question the value of the propositions set forth in defendant's closing argument), we see nothing in the subject remark that is contrary to this purpose. The prosecutor's comment clearly served as an introduction to the people's rebuttal which questioned in detail defendant's posture in the case. Accordingly, we must reject defendant's argument that said comment constituted a disparaging remark against him or his attorney.

■ The second area of prosecutorial remarks objected to by defendant concerns comments made on the reasonable doubt standard. Defendant claims that the prosecutor's remarks to the jury that the burden was "not insurmountable" and "met every day in courtrooms *** throughout the nation" were made in an attempt to minimize the State's burden of proof. We disagree. The law of this State is clear that comments such as these do not reduce or minimize the State's burden of proof. (*People v. Bryant* (1983), 94 Ill. 2d 514, 447 N.E.2d 301.) Furthermore, any misunderstanding by the jury on the matter would have been cured by the prosecutor's restatement of the burden immediately thereafter. At that time he noted that, regardless of the lack of insurmountability in meeting such burden, the doubt merely had to be a reasonable one.

■ The third area of closing argument objected to by defendant concerns the remark regarding defendant's failure to call the doctor who examined the victim as a witness. A review of the record reveals that the prosecutor stated to the jury during rebuttal argument that if any doctor at the treating hospital could have told them anything to indicate that defendant did not rape the victim, they would have heard his testimony. This remark, according to defendant, left the jury with the lasting impression that the defense was hiding from them favorable evidence.

We find this argument especially devoid of merit since it was defendant himself who repeatedly commented in his closing argument that the State's Attorneys office was hiding evidence by not bringing in the examining doctors to testify. The insinuation that the prosecutor was involved in a "cover-up" significantly distinguishes the in-

stant case from the results reached by this court in *People v. Clark* (1983), 114 Ill. App. 3d 252, 448 N.E.2d 926 and *People v. Witted* (1979), 79 Ill. App. 3d 156, 398 N.E.2d 68. Contrary to defendant's assertions, those cases do not control here. In *Clark*, the prosecutors repeatedly accused the defense attorney of "trickery," "sleight of hand," and hiding evidence. On the other hand, *Witted* involved a situation where prosecutors implied that defense witnesses had perjured themselves. The prosecutor in the instant case was not only straightforward in his response, but simply implied that the defense could have called the doctors to testify as well.

The law is clear that where defendant has the same access to witnesses, he cannot complain of comments by the prosecutor concerning defendant's ability to call these witnesses when he invited or provoked such comment. (*People v. Smith* (1982), 111 Ill. App. 3d 895, 444 N.E.2d 801; *People v. Nash* (1980), 90 Ill. App. 3d 612, 413 N.E.2d 16.) In light of the fact that defendant himself insinuated during closing argument that the State was hiding evidence by not calling the doctors to testify and that defendant could have called these expert witnesses but did not choose to do so, we must conclude that the complained of remarks were clearly invited and as a result cannot be deemed improper.

■ The final area of alleged improper prosecutorial remarks involves purported appeals to the jury's sympathies and fears. It is first maintained that it was improper for the prosecutor to refer to the victim as an "unfortunate" individual who returned home to Kentucky feeling very "upset". The subject comments, however, clearly stemmed from reasonable inferences drawn on the evidence or resulted from the prosecutor's own observations of the victim's demeanor at trial. The record, after all, reveals that the victim testified that she had lived in Kentucky all her life and that the prosecutor had noted earlier in closing argument that the victim was visibly shaken when she took the stand and touched defendant's clothing. The State's comments characterizing the victim as an "unfortunate" person was similarly permissible as invited reply.

■ Defendant additionally cites the prosecutorial remark concerning the victim's motivations to testify and the need to protect people from the Lawrence Jennings of the world. These remarks, according to defendant, not only lacked evidentiary support but were designed to arouse fear in the jury.

With respect to the victim's motivations, it is clear that the prosecutor was merely commenting on the credibility of the victim when noting that she had to motive to lie or fabricate her testimony. The

law does not prohibit a prosecutor from discussing the credibility of witnesses. Indeed, it imposes a duty to do. (*People v. Spann* (1981), 97 Ill. App. 3d 670, 422 N.E.2d 1051; *People v. Weatherspoon* (1978), 63 Ill. App. 3d 315, 379 N.E.2d 847.) We therefore see no reason to deny the legitimacy of these remarks.

■ Equally proper for the prosecution in closing argument is the practice to dwell upon the evils of crime, to urge the fearless administration of justice, and to comment on the evil results if defendant is released. (*People v. VanZile* (1977), 48 Ill. App. 3d 972, 363 N.E.2d 429; *People v. Galloway* (1979), 74 Ill. App. 3d 624, 393 N.E.2d 608.) For the prosecutor in the instant case to remark to the jury that the victim had an interest in protecting people from the Lawrence Jennings of the world was, therefore, not at all unreasonable. The comment clearly referred to the evils of crime and indirectly urged the fearless administration of the law. Accordingly, the statement fell within the bounds of permissible closing argument and was not, as defendant intimates, merely designed to arouse fear in the jury.

■ In any event, even if any of the aforementioned remarks had exceeded the bounds of proper argument, defendant would not have been prejudiced for the simple reason that the evidence of defendant's guilt relied upon by the jury to convict him was too overwhelming and strong to have supported any other verdict. Furthermore, no prejudice occurred where the court instructed the jury to disregard any statement made by counsel not based on the evidence. The record here indicates that the trial court twice cautioned the jurors during closing arguments to disregard any argument not based on the evidence. There is no reason to believe that they did not follow these instructions. Having thus carefully instructed the jury, any possible error resulting from the prosecutor's comments would have been corrected and clearly harmless. We therefore reject defendant's contention that the cumulative impact of the prosecutor's purported improper remarks deprived him of a fair trial.

The second issue raised by this appeal concerns the ineffective assistance of counsel. According to defendant, defense counsel's incompetence during trial was yet another factor contributing to the denial of his right to a fair trial.

■ Defendant first maintains that defense counsel conducted the trial without any theory of defense. It is undisputed that defendant's attorney in the instant case faced extreme difficulties in attempting to establish a defense. First, any defense of consent or alibi would have amounted to a fraud in light of defendant's confession to the police and his attorney. The record reveals defendant told both

that he had indeed raped the victim. Furthermore, the overwhelming evidence that was to be produced at trial would have made it impossible for defense counsel to rely on the aforementioned defenses. Second, because defendant had already been evaluated as legally sane at the time of the offense, an affirmative defense based on the theory of insanity would not have been a viable option.

�merit Defendant next claims that defense counsel's failure to interview the State's complaining witness before trial shows that he made no effort to gather any information to substantiate his theory of defense. We find little, if any, merit in this argument since there is evidence that after he obtained the preliminary hearing transcript the public defender turned over his entire file on the case to the substituting attorney. Having testified at the preliminary hearing, there was no need for the trial counsel again to interview the complaining witness.

▬▬ Defendant also complains that defense counsel did not attempt to substantiate his theory of defense with scientific evidence and that had he done so the jury would have reached a contrary verdict. Defense counsel's theory was that a reasonable doubt as to defendant's guilt with regards to rape could have been implanted in the jury's mind if he was allowed to inform them that: (1) the victim had gonorrhea before the incident and, (2) defendant did not have this communicable venereal disease after the occurrence. The aforementioned theory was based on a medical report reviewed prior to trial which indicated that the victim had gonorrhea when she was examined by an attending physician shortly after the rape had occurred. At a hearing on a motion *in limine*, the trial judge informed defense counsel that he would have to establish the necessary minimal scientific foundation to show the relevancy of the victim having gonorrhea before the incident. This meant that defense counsel would have to submit evidence that defendant did not have gonorrhea after the occurrence as well as evidence of the disease's infectious propensities.

Defense counsel was faced at this point with a tactical decision. Although defendant had denied to him ever having gonorrhea, counsel had learned from a different source that defendant had contracted venereal disease on three prior occasions. Introducing evidence of the victim's gonorrhea, defense counsel concluded, would lead to a determination that defendant was a carrier and had infected her. Any evidence indicating defendant had infected the victim would have ensured a finding of guilty. After discussing this possibility with his client, both agreed to drop the issue.

In light of the lack of defenses available, this decision seems to

have been a prudent and intelligent one. Defense counsel's duty to investigate the medical aspects of the gonorrhea issue need not have been exhaustive. In *Strickland v. Washington* (1984), 466 U.S. 668, 681, 80 L. Ed. 2d 674, 689, 104 S. Ct. 2052, 2061, the supreme court noted that the scope of such duty depends on how strong the State's case is and "the likelihood that pursuing certain leads may prove more harmful than helpful."

Defendant's attorney in the instant case was clearly faced with the difficult decision of whether to further investigate the evidence of the victim's gonorrhea in light of the verified information that defendant had a discharge and irritation to his penis at the time of his arrest. Further, despite his client's denials, there was evidence that defendant had had a venereal disease on three occasions in the past. The decision faced by defense attorney was one requiring a judgment call. After weighing a number of factors and consulting with his client, the attorney decided that the emphasis at trial would be placed on the lack of physical evidence. It is clear that counsel's deliberate choice to abstain from conducting an exhaustive investigation was a decision based on the likelihood that the results of such an investigation would have proved to be more harmful than helpful. We thus conclude that counsel's performance was as effective as the facts and the circumstances of this case permitted him to be.

Defendant next contends that he was denied the right to effective assistance by counsel by various omissions of his attorney to act on his behalf. Specifically, defendant claims that certain testimony by the State's witnesses should have been objected to by defense counsel.

The hearsay statements cited by defendant as requiring objection, however, were primarily circumstances where the declarant testified at trial. It is well established that where the declarant is available in court or there is an opportunity to ascertain the veracity of the testimony by cross-examination, there is no hearsay problem. (*People v. Rogers* (1980), 81 Ill. 2d 571, 411 N.E.2d 223.) No objection was therefore warranted where no hearsay problems existed. Furthermore, counsel is not required to make losing motions or objections in order to provide effective legal assistance. *People v. Lewis* (1981), 88 Ill. 2d 129, 430 N.E.2d 1346.

Two additional instances of hearsay testimony requiring objections are cited by defendant to support his contention that he received incompetent legal representation. The first is an alleged hearsay statement by a Chicago Transit Authority (CTA) employee. Contrary to defendant's assertions, however, the content of the conversation between the CTA employee and a police officer was not dis-

closed due to defense counsel's objection. The hearsay issue was thus simply non-existent in this instance. The second hearsay testimony cited by defendant concerned a police radio broadcast. The testimony given there was clearly admissible though because it was not offered to prove the truth of the matter asserted. (*People v. Canamore* (1980), 88 Ill. App. 3d 639, 411 N.E.2d 292.) Instead, the broadcast showed that the arresting officer received notice of an at-large suspect. Any objection made on hearsay grounds would have therefore been inappropriate and useless.

■■ Defendant additionally claims that the testimony concerning the relevancy of the location of the victim's boyfriend and the propriety of the microanalyst's testimony on redirect that hair was found on the front seat of the victim's car required defense counsel's objections. Determining whether or not an objection is the preferred course of action is a matter that requires professional judgment. Trial counsel may at given times consider silence preferable to the attention or emphasis that objections tend to give to otherwise objectionable matters. (*People v. Lewis* (1981), 88 Ill. 2d 129, 430 N.E.2d 1346.) Moreover, there is indication here that objections to the testimony cited by defendant would not have been proper. The location of the victim's boyfriend was, arguably, relevant to establish the unavailability of a possible witness. Also, the redirect testimony of the microanalyst concerning the hairs recovered inside the victim's car was clearly within the scope of cross-examination. The record reveals that the cross-examination of the expert witness probed on numerous occasions into the existence or nonexistence of hairs found at the scene of the crime.

■■ Defendant finally argues that his counsel's waiver of opening statement and failure to move for a directed verdict further evidenced ineffective representation. Waiver of opening statement and failure to move for a directed finding are clearly matters of trial strategy and do not *per se* reflect incompetency of counsel. (*People v. Georgev* (1967), 38 Ill. 2d 165, 230 N.E.2d 851; *People v. Speed* (1982), 106 Ill. App. 3d 890, 436 N.E.2d 712.) Accordingly, we find defendant's argument to be without merit.

■■ In order to establish ineffective assistance of counsel, defendant must show that (a) counsel's performance was seriously deficient; and (b) had the unprofessional errors not occurred, there would have been a reasonable probability that a finding of not guilty would have resulted. (*Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed 2d 674, 104 S. Ct. 2052.) There is no indication in the instant case that counsel for defendant failed to fulfill his fundamental

duties under the guidelines set forth in *Strickland*. The supreme court in that case was well aware of the inherent difficulties in making such an evaluation, especially when done in hindsight. The court particularly expressed concern that in reconstructing the circumstances of counsel's challenged conduct, the resulting evaluation would fall prey to distortion and ultimately lack the objectivity necessary to make a fair assessment. For this reason, the court in *Strickland* stated that a reviewing court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." (*Strickland v. Washington* (1984), 466 U.S. 668, 689, 80 L. Ed. 2d 674, 694, 104 S. Ct. 2052, 2065-66.) To do otherwise, the court warned, would encourage the proliferation of invalid claims. It is not difficult to see that criminal trials resolved unfavorably to the defendant would be particularly susceptible to this kind of danger. One obvious adverse consequence resulting from such a scenario would be the inability of counsel to carry out, with the requisite independence, a successful and effective representation. Intense scrutiny of this type would thus only serve to undermine rather than aid the effective assistance of counsel.

■■■ While counsel here may have approached the defense in a different manner, this alone cannot lead us to conclude that defendant did not receive reasonable professional assistance. We adhere to the notion that competency of counsel should be judged from the totality of his conduct and not on the basis of what appellate counsel might have done in his stead. (*People v. Nutall* (1980), 91 Ill. App. 3d 758, 415 N.E.2d 628.) Moreover, a defendant is only entitled to a fair trial, not a perfect one, for counsel is not required to be infallible. *People v. Nutall* (1980), 91 Ill. App. 3d 758, 415 N.E.2d 628.

This court's decision in *People v. Carter* (1976), 41 Ill. App. 3d 425, 354 N.E.2d 482, does not lend support to defendant's incompetency claim. In *Carter*, the defense attorney stated that his client was "a loser in need of psychiatric examination," "a man who acted without any discretion," and that he "wasn't very brilliant in doing what he did." Counsel's comments were found to be tantamount to admitting his client's guilt. We find nothing akin to that situation in the instant case. We therefore reject defendant's contention that *Carter* has applicability here.

■■■ When considering the totality of the circumstances, the trial counsel in the case at bar clearly argued competently in closing argument, attacked the physical evidence after considering all of the issues, and protected to the best of his ability his client's rights while confronted with overwhelming evidence of his client's guilt. Accord-

ingly, we agree with the State that counsel fulfilled his fundamental obligations to his client and granted him reasonable and effective assistance.

▄▄ Furthermore, even if any of the alleged improprieties had constituted unprofessional errors, there is no reasonable probability that the result reached by the trial court would have been different. The fact is, the evidence adduced at trial overwhelmingly revealed defendant's guilt. Defendant not only confessed to the crime, but the testimony of the victim convincingly matched defendant's confession. The victim's account was also completely corroborated by the other evidence, including physical evidence.

In light of the overwhelming evidence showing defendant's guilt, any error by the trial counsel would not have affected the outcome of the trial. We thus reject defendant's claim that ineffective assistance of counsel denied his right to a fair trial.

Defendant next contends in his *pro se* brief that (1) a post-arrest identification by the victim at the hospital was improper; (2) he was not adequately advised of his *Miranda* rights; (3) he was not proved guilty of rape beyond a reasonable doubt; and (4) the resulting inconsistent verdicts tend to show that the jurors lacked conviction in their decision to find him guilty of rape.

▄▄ With respect to the post-arrest identification, the test to determine the propriety of a "show-up" is whether under the totality of the surrounding circumstances, the confrontation is "so unnecessarily suggestive and conducive to irreparable mistaken identification" as to deny the accused due process of law. (*Manson v. Brathwaite* (1977), 432 U.S. 98, 53 L. Ed. 2d 140, 97 S. Ct. 2243.) Pursuant to this test, courts must consider the opportunity of the witness to view the criminal at the time of the offense, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time lapsed between the crime and the identification.

▄▄ The identification of defendant by the victim at a nearby hospital was entirely proper under the principles enunciated in *Brathwaite*. The witness had a series of opportunities to view defendant at the time of the assault. She first saw defendant when he tried to unlock her car with a wire coat hanger and later when he bashed in the car window. The lighting conditions enhanced the victim's opportunity to observe defendant. There is evidence that the parking lot where the crime took place was well lit. As the defendant proceeded to rape the victim, only a few inches stood between them, enabling Ann T. to see her assailant at close range. This was aided by the fact

that at the time of the intercourse, the roof light inside the car was also lit. Second, Ann T.'s degree of attention was obvious. She was no casual or passing observer, but rather the victim of a sexual crime whose attention could have been nothing but of the highest degree.

Moreover, the victim's description of her assailant was so accurate that it led a police officer hearing the details over the police radio to immediately realize that he had spotted the same individual a short time earlier. As a result of the victim's precise description, the officer was subsequently able to apprehend defendant as he was fleeing the scene of the crime.

Further, the victim was emphatic in her identification of defendant when the latter was taken to the hospital where she was being treated. The record shows that when defendant was brought into the vestibule area of the hospital, the victim immediately yelled "that's him." Thus the requirement that a high level of certainty be demonstrated at the confrontation was certainly satisfied.

Finally, the time lapsed between the crime and the identification in the instant case was negligible. Defendant was taken to the hospital for identification between 5:30 a.m., when the rape had occurred, and 6:30 a.m., when defendant was taken to the police station.

■■ Even if the post-arrest identification was deemed to be improper, defendant's conviction would still stand. First, the victim identified defendant as the rapist in open court. Second, the victim's in-court identification of defendant was completely supported by the evidence. Third, the circumstances surrounding defendant's arrest further substantiated the victim's identification. The evidence of defendant's guilt was, therefore, overwhelming even without the post-arrest identification. Accordingly, we must reject defendant's contention that his conviction should be reversed on the grounds that his post-arrest identification at the hospital was improper.

■■ Defendant's contention that because he did not sign a written waiver of confession he was denied his *Miranda* rights is equally untenable. The failure to make a written statement does not by itself determine the propriety of a defendant's confession. (*People v. White* (1977), 48 Ill. App. 3d 907, 363 N.E.2d 408.) The facts adduced at trial further reveal that defendant was fully advised of his rights and cognizantly waived them without coercion.

The record shows that subsequent to being read his *Miranda* warnings by Sergeant McMullin, defendant indicated that he had understood each of the rights. Defendant was then asked by the officer whether there was anything he wanted to say about the incident. It was at this point that defendant confessed to the crime by stating

that he had seen the victim sleeping in the car, broken the window on the passenger side with a metal bar, entered the vehicle, pulled the victim's pants down, and raped her.

Defendant was 33 years of age at the time of his arrest, had a high school education, and had even taken a few college-level courses. There is no doubt that defendant possessed the intelligence and maturity to voluntarily confess to the rape that he had committed. Since defendant chose to speak, did not seek legal counsel, and was not hindered by communication problems, it is abundantly clear that he was well cognizant of his rights and simply chose not to exercise them. See *People v. Higgins* (1972), 50 Ill. 2d 221, 278 N.E.2d 68.

 Furthermore, the record far from supports defendant's contention that he was not proved guilty beyond a reasonable doubt. As noted previously, defendant fully confessed to having committed the rape, the victim's testimony established that defendant had indeed subjected her to sexual intercourse against her will, and the physical evidence amply corroborated the victim's account as to how the rape had occurred. Additional evidence concerning the victim's prompt notification to the police and the circumstances surrounding defendant's arrest further reinforced the jury's convictions.

The law of this State is clear that a voluntary confession by a competent person is the strongest type of evidence known to law. (*People v. Smith* (1963), 27 Ill. 2d 344, 189 N.E.2d 257.) A confession coupled with the testimony of the victim establishing that defendant forcibly subjected her to sexual intercourse will sustain a conviction for rape. (*People v. Smith* (1963), 27 Ill. 2d 344, 189 N.E.2d 257.) Moreover, the testimony of the victim alone, if positive and credible, is sufficient to sustain a conviction for rape. *People v. Jones* (1976), 40 Ill. App. 3d 850, 353 N.E.2d 375.

Defendant's reliance on isolated pieces of evidence, such as the fact that no sperm was found in the victim's uterus or that no fingerprints were found on the metal bar, to support his contention that reasonable doubt exists as to his guilt, is devoid of merit. The main element required to prove rape is penetration. Defendant ignores that his own confession and the victim's testimony corroborating the same established that penetration had occurred. The expert testimony at trial additionally showed that withdrawal of the penis prior to ejaculation would account for the absence of sperm in the victim's vagina. Furthermore, the absence of spermatozoa does not establish as a matter of law that penetration did not occur. (*People v. Graham* (1978), 60 Ill. App. 3d 1034, 377 N.E.2d 179.) Defendant similarly disregards that the microanalyst firmly established during his testimony that the

presence of a large amount of dirt and dust accounted for the absence of fingerprints on the metal bar.

 It is well settled that a reviewing court may not substitute its judgment for that of the trier of fact on questions involving the weight of the evidence or credibility of the witnesses and may not reverse a criminal conviction unless the evidence is so improbable as to raise a reasonable doubt of guilt. (*People v. Manion* (1977), 67 Ill. 2d 564, 367 N.E.2d 1313.) The trier of fact, in turn, is not required to search out possible explanations compatible with innocence and elevate them to the status of reasonable doubt. (*People v. Huff* (1963), 29 Ill. 2d. 315, 194 N.E.2d 230.) There is no indication that the jury's decision in the instant case was based on other than the weight of overwhelming evidence against defendant adduced at trial. We therefore see no plausible reason to disturb their verdict.

 Defendant's final contention in seeking reversal of his conviction is that the jury's inconsistent verdicts cast a doubt on the degree of certainty with which they decided his fate with respect to the rape charge. We first note that the fact that the trier of fact found defendant guilty of rape but not guilty of deviate sexual assault does not make their verdicts necessarily inconsistent since two completely different acts are required to be found guilty of these offenses.

In order to prove a person guilty of rape, it must be shown that penetration of the female sex organ by the male sex organ of the defendant occurred. (Ill. Rev. Stat. 1983, ch. 38, par. 11—1.) To establish the offense of deviate sexual assault, on the other hand, it must be proved that an act of sexual gratification was perpetrated by defendant involving the sex organs of one person and the mouth or anus of another. (Ill. Rev. Stat. 1983, ch. 38, pars. 11—2, 11—3.) Since rape and deviate sexual assault require two completely different acts, it is clearly consistent for a jury to find a defendant guilty of one and not guilty of the other. We therefore reject defendant's contention that the verdicts reached by the jury in the instant case were inconsistent and that this resulted from a doubt as to his guilt with respect to rape.

The judgment of the trial court is affirmed.

Affirmed.

MEJDA, P.J.*, and SULLIVAN, J., concur.

*This opinion was concurred in prior to the retirement of Presiding Justice James J. Mejda from the court.