NOTICE
This order was filed under Supreme
Court Rule 23 and may not be cited
as precedent by any party except in
the limited circumstances allowed
under Rule 23(e)(1).

2020 IL App (4th) 180764-U

NO. 4-18-0764

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
December 30, 2020
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Jersey County |
| JEFFREY L. WELLS, | ) | No. 18CF118 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Eric S. Pistorius, |
| | ) | Judge Presiding. |

JUSTICE DeARMOND delivered the judgment of the court.
Justices Harris and Holder White concurred in the judgment.

**ORDER**

¶ 1     *Held*:  The appellate court reversed and remanded, finding defense counsel was
ineffective based on a cumulation of errors including a failure to (1) object to
prejudicial hearsay and (2) move for a directed finding at the close of the State's
case-in-chief.

¶ 2     In June 2018, the State charged defendant, Jeffrey L. Wells, with four counts,

including: driving under the influence of drugs (DUI), driving while license revoked, unlawful

possession of methamphetamine, and unlawful possession of drug paraphernalia. In October

2018, after a bench trial, the trial court found defendant guilty, and the matter was set for

sentencing later that month. At sentencing, the trial court sentenced defendant to 12 years in the

Illinois Department of Corrections (DOC) on count I, 10 years on count II, 10 years on count III,

and time served on count IV, with all sentences to run concurrently. Defendant filed a timely

notice of appeal.

¶ 3    On appeal, defendant argues (1) counsel was ineffective for failing to request a directed finding at the conclusion of the State's case-in-chief; (2) the State failed to prove defendant guilty beyond a reasonable doubt of the charges of driving while license revoked and unlawful possession of methamphetamine; and (3) the trial court violated defendant's right to be present during all critical stages of the proceeding when it reviewed video of the incident outside the presence of defendant, counsel, or the State and after defendant testified. Prior to oral argument, OSAD withdrew an additional claim that trial counsel was ineffective by failing to assert defendant's right to a speedy trial. As a result, we do not consider this argument on appeal.

¶ 4                                    I. BACKGROUND

¶ 5    On June 8, 2018, the State charged defendant with four offenses alleged to have occurred on June 6, 2018. Count I, DUI, is normally a Class A misdemeanor (625 ILCS 5/11-501(a)(6), (c)(1) (West 2016)). However, due to defendant's numerous previous DUI convictions, count I was a Class X felony, punishable by a term of 6 to 30 years in DOC (730 ILCS 5/5-4.5-25(a) (West 2016)). In count II, driving while license revoked, the State alleged defendant drove a lawn mower at a time his license to drive was revoked (625 ILCS 5/6-303(a) (West 2016)), which was a Class 3 felony due to defendant's previous criminal record (625 ILCS 5/6-303(d-4) (West 2016)). Count III alleged defendant unlawfully possessed methamphetamine, a Class 3 felony (720 ILCS 646/60(a), (b)(1) (West 2016)). Count IV alleged defendant unlawfully possessed drug paraphernalia (720 ILCS 600/3.5(a) (West 2016)) and is not a subject of this appeal. Defendant appeared in custody on June 8, 2018. The trial court set his bond at $100,000 and set the matter over for arraignment and preliminary hearing on June 11, 2018.

¶ 6    At the final pretrial conference, defendant's counsel indicated defendant wished to waive a jury trial. The trial court advised defendant of his right to either a bench or jury trial.

He acknowledged both his understanding and agreement to proceed with a bench trial and signed a jury trial waiver.

¶ 7        At trial, the State first called Lorena Clark. Clark testified she lived across the street from defendant. At approximately 5 p.m. on June 6, 2018, while standing at her kitchen sink, she noticed defendant leave his driveway on an orange lawn mower and drive westbound in the street. At approximately 9:30 p.m., as she attempted to back out of her driveway, she found what appeared to be the same orange lawn mower in the street blocking her driveway. After returning to her house, she waited a few minutes and then contacted the sheriff's office. Jersey County Sheriff's Deputy Christopher Jones, a 12-year veteran with the Jersey County Sheriff's Office, testified he had received training related to DUI offenses and field sobriety testing and had been involved with 75 to 100 DUI arrests in his career. He stated that on June 6, 2018, he responded to a call regarding an orange lawn mower in the middle of the roadway. Upon his arrival, he observed a lawn mower with a trailer attached parked in the middle of the road and saw defendant standing near the lawn mower. Defendant informed him he parked the lawn mower in the roadway to speak with his sister. While Deputy Jones was speaking with defendant, his partner observed what appeared to be a glass smoking pipe with possible methamphetamine residue in the trailer in a hat. After observing defendant had slurred speech, bloodshot eyes, and dilated pupils, Deputy Jones detained defendant, handcuffing him and placing him in the back of his squad car. While being secured in the back of the squad car and without any questioning, defendant said he had been driving the lawn mower in the street and admitted to smoking methamphetamine. During transport Jones said defendant was "sweating profusely" even with the air conditioning on in the squad car, exhibiting "hyperactive behaviors," and "talking very fast." He said defendant "[w]asn't making a lot of sense." Based

- 3 -

on his observations of defendant, Jones said he was of the opinion defendant "was under the influence of some sort of drug," and since defendant had already told him he had smoked methamphetamine, Jones suspected defendant was under the influence of methamphetamine. Once they arrived at the sheriff's office, defendant performed several field sobriety tests, failing all of them. Deputy Jones took the pipe and conducted a field test on the white residue, which returned a positive result for methamphetamine. He stated he followed the proper procedure and training when administering the field test but did not specify what particular field test kit he used in administering the test or how he conducted it. The State asked him if he "ha[d] [defendant's] driver's status checked?" Deputy Jones responded, "Yes it revealed that he had a revoked driver's license." Jones did not elaborate on what he did to ascertain defendant's license to drive was revoked, and defense counsel did not object. On cross-examination, Jones stated he did not check the lawn mower engine to see if it was warm or if it was engaged or disengaged but defendant did have a "key" in his pocket. Defendant was taken to the hospital, where he was administered a blood and urine test which was sent to the Illinois State Police crime lab for drug testing analysis. Deputy Jones testified that while at the hospital, defendant made the statement, " 'I'm not drunk, I smoked meth, but I'm not drunk.' " The State obtained the admission of the lab report, without objection, which revealed defendant had methamphetamine in his system. The State rested and defense counsel made no motion for a directed verdict at the close of the State's evidence.

¶ 8        Against the advice of counsel, defendant chose to testify on his own behalf. According to defendant, he never drove the lawn mower in the street. He used it to cut his grass that day and had shut it off when he went inside around "5:30[-]6:00, somewhere around there." Defendant said he was pushing the lawn mower across the street later that evening when he

stopped to speak to his sister and later with the mayor as he went by. He said he left the mower in the street when he went to find a key to unlock his garage. By the time he exited his garage, the police were on the scene. Explaining why he did not perform well on the field sobriety tests, defendant said he could not walk on his right leg because "I got diabetic" and has numerous problems with his feet. He said he told the deputy he could not perform some of the tests. Defendant further testified he had no idea how the drug paraphernalia got into his trailer and that it sits in the open where anyone could have access to it. On cross-examination, he said he could not remember if he smoked methamphetamine the day before the incident or on the day of the incident because he does not smoke methamphetamine often. The defense rested and the State moved to introduce videos of defendant's sobriety tests, transport to the jail, and a recording of defendant inside a room at the sheriff's department. These videos were admitted without objection.

¶ 9        After hearing all the testimony and viewing the videos in chambers, the trial court stated:

> "I want to say I think you probably should have taken your
> attorney's advice and not testify. After the presentation of the
> evidence presented by the State there was a question as to whether
> [defendant] was impaired at the time he operated the motor vehicle
> cause [*sic*] the last time it was observed to being operated was at
> 5:00 p.m. when the neighbor saw him driving it."

After finding defendant's testimony "not credible," the trial court found defendant guilty on all four counts. The court sentenced defendant to 12 years on the aggravated DUI, 10 years for

possession of methamphetamine, 10 years for driving while license revoked, and time served on the drug paraphernalia count, all to be served concurrently.

¶ 10   This appeal followed.

¶ 11   II. ANALYSIS

¶ 12   On appeal, defendant claims (1) counsel was ineffective for failing to ask for a directed finding at the close of the State's case because the State's evidence was not sufficient to establish his guilt beyond a reasonable doubt and (2) counsel was ineffective for failing to object to the hearsay testimony of Deputy Jones regarding the status of defendant's driver's license and the results of his field test. We find defense counsel's cumulative errors in failing to object to damaging hearsay and his failure to ask the court for a directed finding at the close of the State's evidence, under the facts of this case, amounted to ineffective assistance of counsel.

¶ 13   A defendant's claim of ineffective assistance of counsel is analyzed under the two-pronged test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *People v. Veach*, 2017 IL 120649, ¶ 29, 89 N.E.3d 366. To prevail, "a defendant must show both that counsel's performance was deficient and that the deficient performance prejudiced the defendant." *People v. Petrenko*, 237 Ill. 2d 490, 496, 931 N.E.2d 1198, 1203 (2010). To establish deficient performance, the defendant must show "counsel's performance 'fell below an objective standard of reasonableness.' " *People v. Valdez*, 2016 IL 119860, ¶ 14, 67 N.E.3d 233 (quoting *Strickland*, 466 U.S. at 688). Prejudice is established when a reasonable probability exists that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *People v. Evans*, 209 Ill. 2d 194, 219-20, 808 N.E.2d 939, 953 (2004) (citing *Strickland*, 466 U.S. at 694). "Satisfying the prejudice prong necessitates a showing of actual prejudice, not simply speculation that defendant may have been prejudiced." *People v. Patterson*, 2014 IL

115102, ¶ 81, 25 N.E.3d 526. A defendant must satisfy both prongs of the *Strickland* standard, and the failure to satisfy either prong precludes a finding of ineffective assistance of counsel. *People v. Clendenin*, 238 Ill. 2d 302, 317-18, 939 N.E.2d 310, 319 (2010). "We review a defendant's claim of ineffective assistance of counsel in a bifurcated fashion, deferring to the trial court's findings of fact unless they are contrary to the manifest weight of the evidence, but assessing *de novo* the ultimate legal question of whether counsel was ineffective." *People v. Manoharan*, 394 Ill. App. 3d 762, 769, 916 N.E.2d 134, 141 (2009).

¶ 14                                    A. The Aggravated DUI Charge

¶ 15            Defendant argues defense counsel was ineffective for failing to move for a directed verdict on the aggravated DUI charge. See 725 ILCS 5/115-4(k) (West 2016) ("When, at the close of the State's evidence or at the close of all of the evidence, the evidence is insufficient to support a finding or verdict of guilty the court may and on motion of the defendant shall make a finding or direct the jury to return a verdict of not guilty, enter a judgment of acquittal and discharge the defendant."). A directed verdict is "appropriate when a trial court concludes, after viewing all of the evidence in a light most favorable to the State, that no reasonable juror could find that the State had met its burden of proving the defendant guilty beyond a reasonable doubt." *People v. Shakirov*, 2017 IL App (4th) 140578, ¶ 81, 74 N.E.3d 1157. A defense attorney's decision to move for a directed finding is considered a matter of trial strategy. *People v. Jennings*, 142 Ill. App. 3d 1014, 1028, 492 N.E.2d 600, 609 (1986). However, deference to trial counsel's trial strategy can be overcome if it " 'appears so irrational and unreasonable that no reasonably effective defense attorney, facing similar circumstances, would pursue such a strategy.' " *People v. Murphy*, 2019 IL App (4th) 170646, ¶ 34, 145 N.E.3d 56 (quoting *People v. King*, 316 Ill. App. 3d 901, 916, 738 N.E.2d 556, 568 (2000)).

¶ 16          At the close of the State's evidence, the only exhibit admitted into evidence was defendant's lab report for his submission of blood and urine, which indicated there was methamphetamine in his system at the time of testing sometime after his arrest late in the evening of June 6. There was no testimony presented to establish how long methamphetamine remains in the system or how long it would be likely to remain in defendant's system. The testimony relating to the aggravated DUI included Lorena Clark's testimony defendant drove a tractor around 5 p.m. and Deputy Jones's testimony that around 9:30 p.m. that same evening, he arrived at that location and found defendant next to the tractor in the road. Deputy Jones also testified about his observations of defendant being under the influence and his performance on field sobriety tests. Finally, there were defendant's admissions to Deputy Jones that he drove the lawn mower and smoked methamphetamine, although not at the same time. This evidence certainly suggests defendant was under the influence of methamphetamine at the time deputies arrived in the area around 9:30 p.m. However, the only evidence indicating defendant drove the lawn mower was over four hours earlier. Defense counsel could have made a plausible argument there was no competent evidence to establish defendant was under the influence at the time he drove the lawn mower. Deputy Jones never testified defendant admitted to smoking methamphetamine *before* or while driving the lawn mower, and Lorena Clark never testified she saw defendant driving around 9:30 p.m., when deputies arrived and defendant appeared visibly intoxicated. The trial court acknowledged this when it stated, "After the presentation of the evidence presented by the State there was a question as to whether he was impaired at the time that he operated the motor vehicle cause [*sic*] the last time it was observed to being operated was at 5:00 p.m. when the neighbor saw him driving it."

¶ 17    The trial court's ruling suggests the court's finding of guilt on this charge was based, at least in part, on what the court considered defendant's incredible testimony. Of course, this testimony occurred *after* the presentation of the State's evidence and *after* defense counsel could have moved for a directed verdict. Further, the State introduced the videos as substantive evidence but not until after defendant testified. They were not a part of the State's evidence at the time defense counsel would have moved for directed verdict. The court's own comments support the conclusion that, had counsel made such a motion at the close of the State's evidence, it is reasonably probable the court would have concluded there was insufficient proof defendant was under the influence of methamphetamine at the time he was in physical control of the lawn mower. See *Evans*, 209 Ill. 2d at 219-20.

¶ 18    Count I of the information charges defendant under section 501(a)(6) of the Illinois Vehicle Code, which makes it an offense to be driving with "any amount of a drug, substance, or compound in the person's breath, blood, other bodily substance, or urine ***." 625 ILCS 5/11-501(a)(6) (West 2016). However, the body of the charge asserts that he drove under the influence of methamphetamine, which is actually charged under section 11-501(a)(4) (625 ILCS 5/11-501(a)(4) (West 2016)). It is clear from the arguments of counsel and the trial court's own finding that everyone operated under the assumption defendant was charged with DUI "under the influence" per section 501(a)(4). Under this charge, the State was required to prove defendant was under the influence at the time he was driving, as this is an essential element of the offense. *People v. Bitterman*, 142 Ill. App. 3d 1062, 1064, 492 N.E.2d 582, 584 (1986). As a result, the presence of methamphetamine in defendant's system many hours later would have no relevance to whether he was "under the influence" at the time he was operating the lawn mower. Defense counsel could have argued the admission of the laboratory report was improper and was

not relevant. There was no evidence connecting the methamphetamine in defendant's system as found in the laboratory report to the time Lorena Clark witnessed him driving a lawn mower over four hours earlier. Based on the body of the offense charged, disregarding the lab report would have resulted in even less evidence of defendant's condition at the time he was seen driving the lawn mower.

¶ 19　　　　There is no conceivable trial strategy for forgoing a motion for directed verdict based on the evidence presented, and we find this failure objectively unreasonable.

¶ 20　　　　　　　　　　B. Driving While License Revoked

¶ 21　　　　Next, defendant argues trial counsel was ineffective for failing to object to Deputy Jones's hearsay statement regarding defendant's license status.

¶ 22　　　　" 'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Ill. R. Evid. 801(c) (eff. Oct. 15, 2015). " 'Hearsay *** is generally inadmissible due to its lack of reliability unless it falls within an exception to the hearsay rule.' " *People v. Tenney*, 205 Ill. 2d 411, 432-33, 793 N.E.2d 571, 584-85 (2002) (quoting *People v. Olinger*, 176 Ill. 2d 326, 357, 680 N.E.2d 321, 337 (1997)). Attorneys provide ineffective assistance when they allow the factfinder to consider improper hearsay. *People v. Jura*, 352 Ill. App. 3d 1080, 1093, 817 N.E.2d 968, 981 (2004).

¶ 23　　　　A person commits the offense of driving with a revoked license when he "drives or is in actual physical control of a motor vehicle on any highway of this State at a time when such person's driver's license, permit, or privilege to do so *** is revoked or suspended ***." 625 ILCS 5/6-303(a) (West 2016). "[T]he only elements necessary to prove the offense of driving a motor vehicle after the revocation of one's driving privileges are: (1) the act of driving

a motor vehicle on the highways of this State; and (2) the fact of the revocation of the driver's license or privilege." *People v. Papproth*, 56 Ill. App. 3d 683, 686, 371 N.E.2d 1097, 1099 (1977) (citing *People v. Turner*, 64 Ill. 2d 183, 354 N.E.2d 897 (1976)).

¶ 24        "Any certified abstract issued by the Secretary of State or transmitted electronically by the Secretary of State pursuant to this Section, to a court or on request of a law enforcement agency, for the record of a named person as to the status of the person's driver's license shall be *prima facie* evidence of the facts therein stated ***." 625 ILCS 5/2-123(g)(6) (West 2016). A defendant always has the opportunity to present evidence to rebut a certified abstract's veracity, and when a defendant fails to challenge the accuracy of the defendant's driving abstract, the abstract's contents are deemed accurate in a prosecution under the Illinois Vehicle Code. *People v. Meadows*, 371 Ill. App. 3d 259, 263, 861 N.E.2d 1171, 1175 (2007).

¶ 25        The State made no effort to admit defendant's certified driving abstract into evidence in order to prove his license to drive at the time of the offense was revoked. Instead, it relied solely on testimony from Deputy Jones, which consisted of the following:

> "Q. And during the course of your interactions and
>
> investigation with Mr. Pace [sic], did you have his driver's status
>
> checked?
>
> A. [Defendant]?
>
> Q. [Defendant's] driver's status checked?
>
> A. Yes it revealed he had a revoked driver's license."

¶ 26        The State did not inquire how the deputy obtained this information or who, if anyone, he contacted to obtain it. This is the only evidence presented to establish defendant was driving after revocation as defendant's driving abstract was never admitted into evidence, and the

record is devoid of any evidence of a stipulation or agreement between the parties concerning its contents. It was clearly offered substantively as proof of defendant's license status. The trial court even treated it as such, finding defendant guilty because "there was testimony presented by officer Jones that [defendant's] driver's license was revoked." There was no reasonable trial strategy in allowing this prejudicial hearsay statement into evidence. See *King*, 316 Ill. App. 3d at 916 (stating tactical decisions that do not seek to avoid the admission of incriminating statements, harmful opinions, and prejudicial facts are not protected as sound trial strategy). Had counsel objected based on hearsay, the testimony would not have been admissible to prove defendant's license status. Having failed to do so, it became substantive evidence. See *People v. Banks*, 378 Ill. App. 3d 856, 861, 883 N.E.2d 43, 48 (2007) (finding where the court found that hearsay evidence regarding defendant's license suspension, where not objected to, supported his conviction for driving after suspension, and when admitted without objection, it is to be considered and given its natural and probative effect). As the State produced no other evidence defendant's driver's license was revoked, defense counsel's failure to object fell below an objective standard of reasonableness. See *Valdez*, 2016 IL 119860, ¶ 14.

¶ 27                              C. Possession of Methamphetamine

¶ 28            In a prosecution for possession of a controlled substance, the State must prove the substance at issue is a controlled substance. *People v. Park*, 72 Ill. 2d 203, 211, 380 N.E.2d 795, 799 (1978). Although a field test of a controlled substance can be sufficient to prove what the substance is, vague and speculative testimony regarding testing of a controlled substance is not sufficient to support a conviction. *People v. Hagberg*, 192 Ill. 2d 29, 33-34, 733 N.E.2d 1271, 1273-74 (2000).

¶ 29       Even the use of a lab report, by itself, without stipulation or waiver, is not sufficient to prove the nature of the substance. See *People v. McClanahan*, 191 Ill. 2d 127, 729 N.E.2d 470 (2000). There, our supreme court found a state police laboratory report cannot be considered *prima facie* evidence for prosecution of the Cannabis Control Act or the Illinois Controlled Substances Act because it violates a defendant's right to confront the witnesses against him. *McClanahan*, 191 Ill. 2d at 140. The supreme court ultimately found the statute unconstitutional and in violation of a defendant's right of confrontation. In *People v. Avery*, 321 Ill. App. 3d 414, 418, 749 N.E.2d 386, 389-90 (2001), this court found that since the defendant did not object to the State's use of the lab report and affidavit as part of its case-in-chief, it was properly considered as proof against the defendant. " '[T]estimony based on hearsay that is not objected to at trial should be given appropriate consideration.' " *Avery*, 321 Ill. App. 3d at 418 (quoting *People v. Becerril*, 307 Ill. App. 3d 518, 526, 718 N.E.2d 1025, 1030 (1999)). In this matter, the State did not produce testimony from a forensic chemist indicating the results of the testing done on the suspected methamphetamine, nor did the State obtain the admission of a lab report indicating the finding of those results. Instead, it relied on testimony from Deputy Jones regarding the field test he conducted on the suspected methamphetamine. Deputy Jones testified as follows:

> "Q. And did you test the pipe for methamphetamine?
>
> A. Yes I did. I field tested it which showed a positive result for methamphetamine.
>
> Q. And have you previously received training on how to conduct the field test for methamphetamine?
>
> A. Yes.

Q. And did you follow the procedure and training that was given to you?

A. Yes.

Q. And you used the approved test kit that was issued by the Jersey County Sheriff's Department?

A. Yes.

Q. And the test showed a positive return for methamphetamine?

A. Yes it did."

¶ 30　　　　On its face, the testimony may appear foundationally sound; however, considering the ease with which the State can obtain a certified copy of a lab report by a forensic scientist from the crime lab or stipulation by counsel, we must consider further whether this is what the supreme court intended in *Hagberg*. There, the court's objection to the sufficiency of the officer's field test testimony was based on his inability to identify the test by name, the instructions for performing the test, the color which would indicate a positive result, and the color which the test disclosed in that instance. Here, the officer testified only in generalities: he performed a field test, he followed the procedures, it was a test approved by his department, and it was positive for methamphetamine. He did not identify the test, explain the procedures, identify his training, or explain how he determined the result was positive. The evidence presented here was "vague and speculative testimony" and was not sufficient to support defendant's conviction. See *Hagberg*, 192 Ill. 2d at 33-34. If the use of a lab report and affidavit of the forensic scientist is not sufficient absent a failure to object, or by stipulation, the hearsay testimony of the officer, testifying only in the most conclusory terms about the field test and its

results, cannot be sufficient to establish a necessary element of the offense. Once again, however, defense counsel interposed no objection to its admissibility for the most critical element of the charge. Confusing the issue, the State did, in fact, introduce a lab report indicating defendant's blood contained methamphetamine when tested. That does not establish the residual substances in the glass pipe were, in fact, methamphetamine.

¶ 31      Defense counsel could have (1) objected to the testimony regarding the field test as legally insufficient to permit the officer to conclude the substance was methamphetamine and (2) made a plausible argument that the testimony concerning the field test was so vague and nondescript, it was insufficient to support a conviction for possession of methamphetamine. There is no conceivable trial strategy for forgoing an objection or moving for a directed finding on the sufficiency of the evidence, and we find this decision (or lack thereof) objectively unreasonable.

¶ 32      When we combine counsel's lack of objections and failure to move for a directed finding at the close of the State's evidence, we must conclude defense counsel's overall performance was deficient and fell below an objective standard of reasonableness. However, since both prongs of *Strickland* must be satisfied to prevail on an ineffective assistance of counsel claim, we are left to determine the level of prejudice.

¶ 33      As previously stated, prejudice is established when a reasonable probability exists that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Evans*, 209 Ill. 2d at 219-20 (citing *Strickland*, 466 U.S. at 694). "In order to satisfy the prejudice prong, defendant need not show that he would have been acquitted, only that a different outcome would be reasonable, as prejudice may be found 'even when the chance that minimally competent counsel would have won acquittal is "significantly less than 50 percent" as

- 15 -

long as a verdict of not guilty would be reasonable.' " *People v. Goods*, 2016 IL App (1st) 140511, ¶ 46, 62 N.E.3d 1168 (quoting *People* v. *McCarter*, 385 Ill. App. 3d 919, 935, 897 N.E.2d 265, 281 (2008) (quoting *Miller v. Anderson*, 255 F.3d 455, 459 (7th Cir. 2001))).

¶ 34       In *Strickland*, the United States Supreme Court told us we should consider the totality of the evidence before the finder of fact when weighing the impact of counsel's errors. *Strickland*, 466 U.S. at 695. It noted:

> "Some of the factual findings will have been unaffected by the errors, and factual findings that were affected will have been affected in different ways. Some errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have had an isolated, trivial effect. Moreover, a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." *Strickland*, 466 U.S. at 695-96.

¶ 35       Prejudice sufficient to warrant concluding counsel's errors changed the outcome of the case need only be such that it undermines confidence in the outcome. *Strickland*, 466 U.S. at 694. Prejudice may be found as long as a verdict of not guilty would be reasonable. *People v. Lucious*, 2016 IL App (1st) 141127, ¶ 45, 63 N.E.3d 211.

¶ 36       The State's evidence, including defendant's admissions, did not establish defendant was driving at a time he was under the influence of drugs. At the close of the State's evidence, upon a motion for a directed finding, a finding of not guilty on the aggravated DUI

charge was a reasonable probability, especially in light of the comments of the trial court. See *Lucious*, 2016 IL App (1st) 141127, ¶ 45.

¶ 37    Likewise, defendant's failure to object to the hearsay regarding his license status prejudiced him. As the State did not introduce defendant's certified driving abstract, this prejudicial hearsay statement was the *only* evidence that defendant's license was revoked. If defense counsel would have lodged a hearsay objection, it would have been sustained, and without other admissible evidence, the trial court would have no alternative but to find defendant not guilty on this charge as well.

¶ 38    Similarly, with regard to the aggravated DUI count, if defense counsel would have moved for a directed finding on the possession of methamphetamine charge, there is a reasonable probability of a different result. The State failed to elicit any information about the specifics of this particular field test other than the conclusory statements that the deputy conducted one and it was positive. No foundation was laid regarding the number and nature of field tests he had performed in the past or his experience with actually conducting field tests for methamphetamine.

¶ 39    The overall effect of allowing inadmissible, highly prejudicial testimony, and defense counsel's failure to seek to dispose of at least some of the charges at the close of the State's evidence is, we believe, sufficiently prejudicial as to undermine confidence in the outcome. "Each of the errors detailed above, in and of itself, casts doubt on the reliability of the judicial process. Cumulatively, we find that the errors created a pervasive pattern of unfair prejudice to defendant's case." *People v. Blue*, 189 Ill. 2d 99, 139, 724 N.E.2d 920, 941 (2000). We decline to address the other issues raised by defendant in light of our remand.

¶ 40                                III. CONCLUSION

¶ 41        For the reasons stated, we reverse the trial court's judgment and remand for a new

trial. Because we find sufficient evidence suggesting defendant committed these offenses, a

retrial is not barred by double jeopardy. *People v. Drake*, 2019 IL 123734, ¶ 29, 131 N.E.3d 555.

¶ 42        Reversed and remanded.