FIRST DIVISION

September 26, 2000       

No. 1-99-1877

PEOPLE OF THE STATE OF ILLINOIS,                     )                       Appeal from the

                                                                                         )                       Circuit Court of 

Plaintiff-Appellee,                                                            ) Cook County.

 )

v. ) 91 CR 26304

 )

MARCUS KING,                                                            ) Honorable

 ) James B. Linn,

Defendant-Appellant.                                          ) Judge Presiding.

JUSTICE COHEN delivered the opinion of the court:

Defendant Marcus King appeals the circuit court's denial of his petition for relief pursuant to the Post-Conviction Hearing Act, (725 ILCS 5/122-1 (West 1998)).  After conducting an evidentiary hearing, the trial court determined that defendant's trial counsel had not rendered ineffective assistance in violation of defendant's constitutional rights.  Because we cannot conceive of any sound trial strategy that would justify counsel's failure to call an available alibi witness who would have bolstered an otherwise uncorroborated defense, we reverse and remand this case for a new trial. 
(footnote: 1)
I. BACKGROUND

Following a bench trial, defendant was convicted of aggravated criminal sexual assault and aggravated kidnapping for the abduction and rape of 17-year-old L.R., a passenger on defendant's school bus route.  The trial court sentenced defendant to consecutive prison terms of nine and six years for these respective offenses.  We affirmed these convictions on direct appeal.  
People v. King
, No. 1-92-1945 (1993) (unpublished order pursuant to Supreme Court Rule 23).

Defendant thereafter filed a timely 
pro
 
se
 petition for relief pursuant to the Post-Conviction Hearing Act, (725 ILCS 5/122-1 (West 1998)).  In his petition, defendant alleged: (1) he was denied his right to testify at trial because his attorney refused several requests he made to testify on his own behalf, (2) he was denied effective assistance of counsel because (a) he was never informed that he had the right to testify and  (b) his attorney failed to call Dovie Mathews, an essential alibi witness, (3) he was denied his right to present a defense because neither he nor his alibi witness was called to testify at trial, and (4) he was denied effective assistance of appellate counsel because these issues were not raised on direct appeal even though he discussed them with his attorney.   

In support of his post-conviction petition, defendant attached his own affidavit and the affidavit of Dovie Matthews, a then 69-year-old woman who worked as a bus attendant on defendant's bus the day of the alleged rape.  Defendant's affidavit stated that he provided his trial counsel, Jeff Ginsberg, with Dovie Matthews' name and told Ginsberg that Matthews could testify on his behalf.  As far as defendant knew, attorney Ginsberg did not interview Matthews in preparation for trial, although she was present at court and available to testify on the trial date.  Defendant maintained that he did not rape L.R. and was never alone with her on the bus.  Finally, defendant stated that L.R. arrived home a little late on the day in question because he had taken an additional route to drop off an extra group of children.  

 Defendant's statements were corroborated by Dovie Matthews' affidavit.   Matthews stated that she was the bus attendant assigned to defendant's route on October 15, 1991, the date L.R. claimed she was raped.  Matthews further stated that she was on the bus the entire time the students were riding home from school as her job required.  According to Matthews, on the day of the alleged rape she did not leave the bus early.  Furthermore, L.R. was never alone on the bus with defendant.   Matthews explained that she and defendant did a double shift that day, driving two separate groups of children home at the same time.  Eight extra students were dropped off first, then the seven regular students were dropped off.  Matthews also stated that she was in the courtroom on the day of defendant's trial but was told to leave and wait in another room, where she remained available and was ready to testify to the above facts.  Matthews denied that she talked to defendant’s trial counsel on the day of defendant's trial.  She further stated that she waited to testify until the end of the day when someone told her that the trial was over and the courtroom was locked.

The trial court summarily dismissed defendant's petition.  On appeal, we reversed and remanded the case with instructions for the trial court to appoint counsel to represent defendant and to conduct further proceedings consistent with the Post-Conviction Hearing Act.  We noted that to preclude a summary dismissal,  the petition need only contain a statement "which presents the gist of a meritorious constitutional claim [citation.]"  
People v. King
, No. 1-95-1809 (1996) (unpublished order pursuant to Supreme Court Rule 23).

Upon remand, defendant's appointed counsel filed a memorandum in support of defendant's original 
pro
 
se
 post-conviction petition, requesting a new trial or an evidentiary hearing.  An evidentiary hearing was never conducted.  The trial judge, after hearing argument, granted the State's motion to dismiss defendant's post-conviction petition on the merits.  Again, this court reversed and remanded.  We held that defendant was entitled to a post-conviction evidentiary hearing to properly evaluate his claims because a substantial showing of a violation of a constitutional right had been made and his allegations were supported by the record and affidavits.  
People v. King
, No. 1-97-0729 (1998) (unpublished order pursuant to Supreme Court Rule 23).

On April 14, 1999, the parties appeared on the trial court's call to set a date for the evidentiary hearing.  
The sitting post-conviction judge inquired as to why an evidentiary hearing was still necessary in light of the fact that defendant had already served a seven-year prison sentence and was no longer incarcerated.  Defendant, appearing personally, informed the court that he wanted to proceed with his post-conviction claims in an effort to clear his name.  At this time,
 over defense counsel's objection, the post-conviction judge interpreted the appellate mandate (No. 1-97-0729) as requiring an evidentiary hearing solely on the issue of ineffective assistance of counsel for attorney Ginsberg's failure to call Dovie Matthews as a witness.  An evidentiary hearing was set for May 12, 1999, to address this single issue.

On May 12, 1999, the trial court denied defendant's motion to reconsider the court's prior order which limited the scope of the evidentiary hearing, thus effectively dismissing all but one of defendant's post-

conviction claims.  Defendant also presented a motion to continue the evidentiary hearing due to the unavailability of the defendant's key witness, Dovie Matthews.  However, the State stipulated to the facts contained within Matthews' affidavit and further stipulated to her credibility.   The evidentiary hearing immediately proceeded.   The following evidence was presented: (1) testimony from defendant's trial counsel, Jeff Ginsberg, regarding his failure to call Matthews as a witness, (2) the appellate record of the trial with transcripts of witnesses' testimony, (3) defendant's affidavit submitted in support of his post-conviction petition, (4) stipulated testimony of Dovie Matthews that provided an alibi for defendant, and (5) stipulated sign-in records from Jacqueline Transportation, Inc., indicating that Dovie Matthews was the attendant on defendant's bus on October 15, 1991, the date of the alleged rape.

As the State was presenting its opening statement, the post-conviction judge interrupted and called Jeff Ginsberg to the stand.  Attorney Ginsberg was sworn and the following direct examination was conducted by the judge:

"The Court: Why didn't you call Debbie [
sic
] Matthews?

Mr. Ginsberg:  Judge, I don't recall.  I know that I did subpoena her.  I did speak to her on the phone once.  I then subpoenaed her to court. I remember interviewing her after Miss Morask spoke– or before Miss Morask spoke to her.  And at that point, Judge, I chose not to call her as a witness.  That's all I recall.

The Court:  That's a decision you made as trial strategy at that time?

Mr. Ginsberg:  Yes, Judge, it was.

The Court:  You felt that calling her as a witness would not be helpful in your representation of Mr. King?.

Mr. Ginsberg:  Judge, I can only assume–

***

The Court:  You talked to her?

Mr. Ginsberg:  I chose not to call her.  It was a matter of strategy.  I do not recall specifically why I did not call her after speaking to her."

On cross-examination by defense counsel, Ginsberg testified that he was aware, at the close of his proofs, that he had not presented any evidence to rebut the testimony of the State's witnesses who said Matthews got off the bus early.  Ginsberg further testified:

"Ms. Raddick: Do you recall what your trial strategy was for this case?

Mr. Ginsberg: Trial strategy in this case, as far as I can recollect ***, we felt that the mental state of the victim in this case made her incapable of being a credible witness due to a problem with psychosis. 

***

Ms. Raddick: You did review your trial file before testifying here today?

Mr. Ginsberg: I reviewed the notes I had.  I had some of the cross-examination, some of the directs, and I had the half sheet.  Those are the things that I reviewed approximately two months ago."

The State presented no other evidence to rebut defendant’s post-conviction claim of ineffective 

assistance of counsel.

 On defense counsel's motion, the trial court admitted the appellate record of trial as evidence at the evidentiary hearing.  An exhaustive review of the record indicates that there was no physical evidence presented at trial that linked defendant to the rape.  Defendant was primarily convicted on the testimony of 17-year-old L.R. and two other students who attended South Central High School.  South Central is an alternative high school program for students exhibiting psychological dysfunction.  The students at South Central suffer from behavioral disorders and/or emotional problems.  On the date of the alleged rape, defendant drove a school bus route that dropped South Central students off directly at their homes.

 L.R., the victim, testified that on the afternoon of October 15, 1991, she rode home on the school bus driven by defendant.  On this day, defendant varied the customary route by dropping off her friend Eric Green and the bus attendant, Dovie Matthews, before her.  L.R. testified that Matthews requested to be let off the bus early and defendant responded "go ahead, it's Friday."
(footnote: 2)   At one point in her testimony, L.R. stated that Eric was still on the bus when Matthews got off.   Later, L.R. changed the sequence of events, stating that the bus first dropped off Eric and then Matthews, leaving her alone on the bus with defendant.  Defendant then drove the bus to an unfamiliar alley that was lined with arching trees and abandoned buildings.

   L.R. further testified that defendant went to the middle of the bus and sat in the seat across from her.  The first thing defendant did was touch her breasts underneath her shirt.  Next, defendant touched her vagina from outside her pants, and then her vagina from underneath her pants.  Defendant instructed her to undress.  L.R. complied by removing one leg from her pants and taking her underwear off.  Defendant then pulled down his pants, moved over to her seat, got on top of her, and inserted his penis into her vagina.  Moments later, L.R. recanted stating, "[n]o, he sat me on top of him"  when he inserted his penis.  L.R. recalled that the assault took about 10 to 15 minutes.  

After a lunch recess, L.R. was recalled to the stand.  At this point in her testimony, L.R. altered the chronology of the above events and gave contradictory answers.  Specifically, L.R. stated that the first thing defendant did was remove his pants and try to force her to perform oral sex.   L.R. refused, stating, "Stop, I don't do that."  Afterwards, defendant took her underwear off, sat her on top of him and raped her.   L.R. testified that, when she arrived home that afternoon, "it was kind of late."  When she went inside, L.R. threw her underwear in the garbage and took a bath because "it could be some kind of odor *** or something."  L.R. did not tell her mother what happened at this time because she was afraid her mother would think she was lying.  

L.R. further testified that she approached her friend Richie Walker in the school cafeteria on either October 16 or 17 and told him that the bus driver had raped her.  L.R. stated that Richie told her she should tell a teacher.  L.R. reported the rape to Ms. Fefee, a clinical supervisor at South Central, although L.R. could not remember if it was the same day.  At the end of the day, L.R. went home and told her mother about the rape.  In the evening, three South Central faculty members went to L.R.'s house to meet with L.R. and her mother.  L.R. stated that Richie Walker came over that night but only after everyone left.  Later that evening, the police came to her house and L.R. led them to the alley where the rape occurred.  L.R. described the alley as lined with arching trees and abandoned buildings. 

L.R. also testified that defendant had previously raped her during the middle of the summer of 1991.  Similar to the October 15, 1991, rape, defendant let all the students off the bus before her but this day there was no attendant on the bus.   L.R. testified that the only person she told about the summer rape was her friend Richie Walker. 

On cross-examination, L.R. denied that she initially reported to her teachers that both times defendant raped her were during the summer of 1991.
(footnote: 3)   L.R. also testified that she still has seizures and that she only hears voices if she fails to take her medicine on time.  L.R. quickly stated that she always takes her medicine on time.

Richie Walker, a 19-year-old classmate of L.R.'s, testified that he rode home on the bus with L.R. on October 15, 1991.  Richie stated that before he exited the bus, he suspected that the bus driver was up to something.  Consequently, when Richie was dropped off at his building located at 51 East 53rd Street, he dropped his book bag off with building security and ran down Michigan Avenue toward his friend Eric Green's house at 46th Street and Drexel Boulevard.  When he arrived, Eric pointed in the direction of the bus and told Richie that L.R. was alone on the bus with defendant.  Richie wondered why the bus driver dropped Eric off before L.R.  She was usually dropped off at her house on 45th Street and Drexel Boulevard, before Eric was dropped off.  Richie then followed the bus as it went east toward Evans Avenue.  After the bus went into an alley, Richie stopped.  He described the alley as being lined with abandoned buildings but stated that there were no trees in the alley. 

 Richie testified that on the evening of October 16, he and Eric Green went to L.R.’s house and that three South Central faculty members were there with L.R. and her mother.  Richie stated that he was present when L.R. told everyone about the rape that occurred the previous afternoon. 

On cross-examination, Richie admitted that, on the day of the alleged rape, he did not go close to the bus and could not see what was happening on the bus.  According to Richie, he stood and watched from a distance as the bus sat in the alley for at least half an hour.  Richie further testified that he did not tell L.R.'s mother, school officials or anyone in his family that the bus driver had taken L.R. into an alley alone on October 15, 1991.  Richie stated that he was waiting on L.R. to talk to somebody first and only then would he talk to someone. 

The State offered a summary of facts and both parties stipulated that, if called to testify, Eric Green would state the following.  Eric is a 19-year-old male, he attends South Central, and he rode home on the bus with L.R. and Richie on October 15, 1991.  Eric was usually dropped off after L.R. but, on the date in question, defendant dropped Richie off first, then Dovie Matthews, and then Eric.  Eric would further testify that Dovie Matthews asked to be dropped off early and made a pact with everyone on the bus not to tell.  After Eric got off the bus, Richie ran up to him and asked where the bus had gone.  Eric pointed out that the bus had turned east toward Evans Avenue.

The State also called as witnesses Antoinette Fefee, a clinical supervisor at South Central, Cynthia Robinson, L.R.'s mother, and Chicago police officer Angela Oden, who each recounted L.R.'s report of the October 15, 1991, rape.  Significantly, Officer Oden testified that, a couple of days after the rape occurred, L.R. identified an alley with abandoned buildings and arching trees as the location of the rape after driving around the neighborhood with Officer Oden.  The alley identified by L.R. was located at 4329 S. Champlain Avenue, which is west of Drexel Boulevard.  From there, Officer Oden took L.R. to an area hospital for an examination.

On behalf of the State, Dr. Mary Jane Staba testified that she examined L.R. on October 18, 1991, in the pediatric emergency unit of the University of Chicago Hospital.  At that time, L.R. complained of vaginal irritation, burning, itching and discharge.  Dr. Staba found white vaginal discharge in the vaginal vault and failed to find any remnants of a hymen.  While Dr. Staba asserted that these conditions were consistent with L.R.’s history of rape, she also admitted that these conditions could be related to something other than sexual trauma, such as an infection, improper hygiene after urination or wiping the wrong way.  Moreover, she noted that L.R.’s vaginal discharge could be the result of various factors, such as a yeast infection, gonorrhea, chlamydia or the period preceding menstruation.  In addition, L.R.’s lab results indicated that she had a urinary-tract infection at the time of examination.

At the close of the State's case, defense counsel called three witnesses.  Each of these witnesses had knowledge of L.R.'s psychotic episodes while she was an inpatient at University of Chicago Hospital almost a year prior to the October 15, 1991, rape.   Dr. Fred Overius was L.R.’s attending physician while she was hospitalized during the summer of 1990.  He related that after L.R. went into a coma for several weeks in May 1990, she was intellectually dulled and she continued to have seizures.  Because of his inability to control L.R's behavior following these seizures, she eventually was transferred to the psychiatric unit for further treatment.

While Dr. Overius treated L.R., her seizures were sometimes followed by a one- to two-week period where L.R. would be in a continuously confused, hallucinating, delusional state in which much of her verbal production would be incoherent.  For example, she might utter statements regarding sexual acts such as “my brother’s head is inside my body.  Can you see it?”   As time progressed, L.R.’s condition would fade from psychotic aggressive behavior to more coherent but sullen irritability, to normalcy.  While her hallucinations seemed real to her, Dr. Overius testified that L.R. did not remember her hallucinations afterward.

Two registered nurses also testified for the defense about some of the hallucinations L.R. had regarding sexual acts.  Sheila James recounted a hallucination L.R. suffered on September 29, 1990.  In a loud, argumentative, delusional state, L.R. stated “Can’t you see him, he has got his thing in my stuff” while she pointed to her vagina.  On a separate occasion, L.R. threw her teddy bear at her roommate, stating “My brother’s head is in her body, Can you see it?  I am not crazy, He is in me.  I can feel him.”  

In rebuttal, the State presented the testimony of Regina Hayes, L.R.’s teacher and therapist, who confirmed that L.R. continued to have seizures.  Hayes stated that she never observed L.R. exhibit psychotic behavior or hallucinations after a seizure.  Hayes saw L.R. just before she boarded the bus on October 15, 1991, and thought L.R. appeared behaviorally normal.  Hayes further testified that L.R. had not suffered a seizure on October 15, 1991.  Hayes also stated that when L.R. told her about the October rape, L.R. appeared upset and fidgety, but not hallucinating or psychotic.

The post-conviction judge also admitted the affidavit of Dovie Matthews into evidence at the evidentiary hearing.  Defense counsel noted that the State had stipulated that Matthews would testify in a true and credible manner as to those statements contained in her affidavit.   The post-conviction judge determined that it was unnecessary for defense counsel to read Matthews' testimony aloud noting that it was already a part of the record.   The court then admitted into evidence defendant's own affidavit submitted in support of his post-conviction petition.  Finally, the State stipulated that there are sign-in records which indicate that Dovie Matthews was the bus attendant who worked on the school bus with defendant on the day of the alleged rape. 

At the close of evidence, the post-conviction judge stated that the sole issue before the court was whether Jeff Ginsberg's decision not to call Dovie Matthews was ineffective assistance of counsel under the "
Strickland v. Washington 
test." 
 
The court then ruled as follows:

" I know that Mr. Ginsberg was not lacking in diligence because he sought out this potential witness.  He interviewed this potential witness. He made a decision at trial not to call this witness. I don't know that there was anything that would have changed the outcome of the case.

***

He made a judgment not to call that witness.  He doesn't recall specifically why, but I'm assuming that there were good reasons.  Obviously, that witness is not going to say something at trial that was going to be helpful to him at that time. 

*** 

The fact that the Court did find three witnesses that testified against Mr. King to be credible beyond a reasonable doubt is not the fault of Mr. Ginsberg.  I don't see that ineffective assistance of counsel has been demonstrated at all in this case."

In finding that Ginsberg did not render ineffective assistance, the post-conviction judge, among other things, improperly took judicial notice that Ginsberg was a public defender handling major felony cases for 15 years, that he is a "well-seasoned" and "well-experienced" lawyer that has "appeared before me many times."  The court further stated, "I never noticed anything close to him lacking in diligence or certainly not lacking in confidence."  This appeal followed.

On appeal, defendant argues that he was denied his due process right to a fair and impartial evidentiary hearing when the post-conviction judge abused his discretion by (1) limiting the hearing to the single issue of ineffectiveness of counsel, (2) assuming the role of an advocate by conducting the examination of the State’s only witness whereby he elicited favorable testimony for the State, and (3) making comments that made it clear from the first court date that the court was predisposed to rule against the defendant.   

Defendant also argues that the post-conviction judge’s denial of his claim of ineffective counsel must be reversed because the court’s determination that Ginsberg’s failure to call Matthews as a witness resulted from “trial strategy” rather than incompetence was contrary to the evidence adduced at the hearing.  Defendant further argues that the post-conviction judge’s ruling was error because the court made its decision under the faulty assumption that the mere characterization of counsel’s decision not to call Matthews as “trial strategy” operated as a blanket immunity to any allegation of ineffective assistance of counsel. 

Finally, defendant contends that Ginsberg’s failure to call Dovie Matthews as an alibi witness during his trial was sufficiently prejudicial as to deny him the effective assistance of counsel, guaranteed under the sixth and fourteenth amendments of the United States Constitution (U.S. Const., amends. VI, XIV).  
McMann v. Richardson
, 397 U.S. 759, 771 n.14, 25 L. Ed. 2d 763,773, n.14, 90 S. Ct. 1441, 1449 n.14 (1970).  As a result of the post-conviction judge's errors, defendant argues that his case should be remanded for a new trial.  For the reasons that follow, we agree.

II. ANALYSIS

"The Illinois Post-Conviction Hearing Act provides a mechanism by which criminal defendants can assert that their convictions were the result of a substantial denial of their rights under the United States Constitution, the Illinois Constitution, or both."  
People v. Haynes
, No. 85180, slip op. at 19 (July 6, 2000); see 725 ILCS 5/122-1 (West 1998).  A defendant must show that he has suffered a substantial deprivation of federal or state constitutional rights to be entitled to post-conviction relief.  
Haynes
, No. 85180, slip op. at 19.  "Claims alleging ineffective assistance of counsel are judged under the standard set forth by the United States Supreme Court in 
Strickland v. Washington,
 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984)."  
Haynes
, No. 85180, slip op. at 26.  

To establish a claim for ineffective assistance of counsel, defendant must show that counsel's representation fell below an objective standard of reasonableness so as to deny him the right to "counsel" guaranteed under the sixth amendment.  
Strickland
, 466 U.S. at 687-88, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064; 
People v. Palmer
, 162 Ill. 2d 465, 475 (1994).  In assessing such a claim, the court must give deference to counsel's conduct within the context of trial and without the benefit of hindsight.  
Strickland
, 466 U.S. at 689, 80 L. Ed. 2d at 694, 104 S. Ct. at 2065.  As such, "'a defendant must overcome the strong presumption that the challenged action or inaction of counsel was the product of 
sound
 trial strategy and not incompetence.'" (Emphasis added.)  
Haynes
, No. 85180, slip op. at 26, quoting 
People v. Coleman
, 183 Ill. 2d 366,397 (1998); see 
People v. Thompkins
,191 Ill. 2d 438, 469 (2000).

In addition to showing that counsel's performance fell below an objective standard of reasonableness, a defendant must establish that the deficient performance resulted in prejudice.  
Strickland
, 466 U.S. at 687, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064.  Proof of prejudice requires an affirmative showing that " 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.' " 
Haynes
, No. 85180, slip op. at 26, quoting 
Strickland
, 466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068. 

The trial court must make the determination of whether to grant or deny a post-conviction petition based upon the evidence introduced at the evidentiary hearing. 
People v. Downey
, 198 Ill. App. 3d 704, 717 (1990).  Such determinations made by the post-conviction judge following an evidentiary hearing will not be disturbed unless manifestly erroneous. 
People v. Morgan
 187 Ill. 2d 500, 528 (1999). 

It is well settled that strategic choices made by defense counsel after a thorough investigation of the law and facts relevant to the plausible options are "virtually unchallengeable."  
Strickland  
466 U.S. at 687-89, 80 L. Ed. 2d at 693-95, 104 S. Ct. at 2064-66; 
People v. Mitchell, 
189 Ill. 2d 312, 347 (2000); 
People v. Towns,
 182 Ill. 2d  491, 514 (1998)
.
  It is equally settled that trial counsel’s decision whether to present a particular witness is within the realm of strategic choices that are generally not subject to attack on the grounds of ineffectiveness of counsel. 
People v. Tate,
 305 Ill. App. 3d 607, 612 (1999) citing 
People v. Flores,
 128 Ill. 2d 66, 85-86 (1989).  However, along with these general rules, our case law holds that counsel’s tactical decisions may be deemed ineffective when they result in counsel’s failure to present exculpatory evidence of which he is aware, including the failure to call witnesses whose testimony would support an otherwise uncorroborated defense.  
People v. Tate,
 305 Ill. App. 3d at 612 citing 
People v. Gibson,
 244 Ill. App. 3d 700, 703-04 (1993), 
People v. Truly,
 230 Ill. App. 3d 948, 953 (1992), 
People v. Skinner
,  220 Ill. App. 3d 479, 485 (1991), and 
People v. O’Banner,
 215 Ill. App. 3d 778, 790 (1991)).

 The State argues that Ginsberg’s decision not to call Matthews as a witness is exempt from scrutiny on the issue of ineffective counsel because Ginsberg investigated his available options, contacted Matthews, issued a subpoena for her to appear at trial and made a tactical decision not to call her as a witness.   In support of this contention, the State relies on 
People v. Consago, 
170 Ill. App. 3d 982, 988 (1988), in which the appellate court stated:

“[T]he requirements as set forth in 
Strickland
 are extremely stringent and the defendant here must overcome the strong presumption of effective assistance of counsel and the general proposition that failure to secure testimony is generally regarded as a matter of trial strategy.”

In 
Consago, 
Chris Humberg, an eyewitness to the shooting, had provided defendant's trial counsel with a sworn statement of his testimony prior to trial and counsel had initially listed Humberg as a potential witness.  The State correctly asserts that the appellate court in 
Consago
 found that these facts indicated that trial counsel's decision not to call Humberg was made after a thorough investigation.  However, in determining that counsel’s decision was the product  of sound trial strategy rather than incompetence, the court gave great weight to the fact that portions of the Humberg's testimony were potentially damaging to defendant’s case.  The appellate court stated:

"An examination of Humberg's sworn statement *** reveals that Humberg did not see the gun at all until after the shot went off. At that point, he stated that he thought Consago dropped the gun on the floor. Humberg stated that he then saw Consago wipe the prints off the gun. There were, therefore, certain portions of Consago's [
sic
] testimony which could have been harmful to Consago. Accordingly, we agree with the State that the failure to call Humberg must be viewed as a strategical maneuver." 
Consago
, 
170 Ill. App. 3d at 988.

See also 
People v. Whittaker, 
199 Ill. App. 3d 621, 630 (1990) (counsel’s failure to call witnesses was not 

ineffective assistance because, based on their affidavits, neither would testify to circumstances that would appreciably aid the defense theory).

 We reject the State’s argument that 
Consago
 is applicable to the case at bar because, 

unlike the potentially damaging witness testimony in 
Consago
, the statements in Dovie Matthews' affidavit were unequivocally exculpatory.   Matthews swore that she did not leave the bus early on October 15, 1991, and that defendant was never alone on the bus with L.R..  These statements provided an alibi for defendant that could only have served to bolster the defense theory that the rape did not occur.  Matthews' testimony would have also complemented attorney Ginsberg's stated "trial strategy," which was to prove that L.R. was not a credible witness due to a problem with psychosis.  Accordingly, we find that the post-conviction judge's determination that "the witness [was] not going to say something at trial that was going to be helpful to him at that time" is manifestly erroneous.

  The State’s arguments regarding 
Consago
 demonstrate an erroneous assumption that any strategic decision determined by the court to be ineffective assistance must, in part, be predicated on counsel’s failure to adequately investigate.  To the contrary, in 
People v. Tate, 
305 Ill. App. 3d 607 (1999),
 
the appellate court remanded defendant’s post-conviction petition for an evidentiary hearing to determine the reasoning behind trial counsel's failure to call three available alibi witnesses, despite the fact that counsel had conducted a thorough investigation. 
Tate, 
305 Ill. App. 3d at 612-613.  In 
Tate, 
defendant was convicted of first-degree murder and attempted first-degree murder.  Defendant subsequently filed a post-conviction petition claiming  ineffective assistance of counsel.  Rejecting the State’s argument that counsel’s decision must be considered sound trial strategy because counsel had interviewed the witnesses and was aware of their testimony, the appellate court stated, “[t]he record does not reflect whether counsel made a professionally reasonable tactical decision not to call the witnesses or whether, as defendant maintains, counsel failed to call them as the result of incompetence.” 
Tate, 
305 Ill. App. 3d at 612.   

Similarly, in 
People v. O’Banner
 215 Ill. App. 3d 778, 790 (1991), the appellate court stated that where a defendant’s attorney is aware of exculpatory evidence and does not present it, counsel can be deemed ineffective.  
In 
O’Banner, 
defendant asserted that her trial counsel was incompetent in failing to call her son, Curtis, to the stand to establish that defendant had not shot the victim. The record revealed that Curtis first told defendant’s trial counsel in April 1986 that he had actually shot the victim.  During defendant’s trial in 1989, Curtis waited outside the courtroom expecting to be called as a witness but was never called.  The appellate court, noting that the State did not present testimony from defendant’s trial counsel to explain why he did not call Curtis, held, “[w]e find that the failure to call *** Curtis O’Banner to the stand to present this exculpatory evidence constituted ineffective assistance of counsel.” 
O’Banner, 
215 Ill. App. 3d at 791; see 
People v. Skinner
 220 Ill. App. 3d 479,485 (1991) (counsel’s failure to call witnesses was ineffective where jury was presented an uncorroborated defense).

 We find that the facts in the case at bar are closely aligned with those presented in 
Tate, O’Banner, 
and 
Skinner.  
These cases and the cases cited therein illustrate that the mere characterization of counsel’s decision not to call an available alibi witness as “trial strategy” does not preclude inquiry as to the reasonableness of counsel’s strategy.  The constitutional measure for the sufficiency of counsel’s representation is “reasonably effective assistance.” 
People v. Faulkner,
 292 Ill. App. 3d 391, 394 (1997), citing 
Strickland
, 466 U.S. at 687-88, 80 L. Ed. 2d at 693-94, 104 S. Ct. at 2064-65.  

A defendant can overcome the strong presumption that defense counsel’s choice of strategy was 
sound
 if counsel’s decision appears so irrational and unreasonable that no reasonably effective defense attorney, facing similar circumstances, would pursue such a strategy.  
Faulkner,
 292 Ill. App. 3d at 394.  Accordingly, we decline to assume, without any explanation, that attorney Ginsberg’s failure to call Matthews as a witness was the product of 
sound 
trial strategy.  “Sound trial strategy is made of much sterner stuff." 
People v. Moore
, 279 Ill. App. 3d 152, 159 (1996).  “It embraces the use of established rules of evidence and procedure to avoid, when possible the admission of incriminating statements, harmful opinions, and prejudicial facts.” 
Moore
, 279 Ill. App. 3d at 159.

In light of the exculpatory nature of the statements in Matthews' affidavit, Ginsberg’s sole reliance on a defense strategy designed to attack the credibility of only one of the State’s three occurrence witnesses was objectively unreasonable.  Ginsberg testified that he was aware, at the close of his proofs, that he had not presented any evidence to rebut the testimony of the State’s witnesses who testified that Matthews got off the bus early.  Because Ginsberg failed to provide any explanation at the evidentiary hearing and because we cannot conceive of any sound trial strategy that would justify counsel's failure to call an available alibi witness who would have bolstered an otherwise uncorroborated defense, we find that attorney Ginsberg’s failure to call Matthews as a witness was the result of incompetence.  

We note that the State presents, for the first time on appeal, what the State categorizes as “reasonable explanations” for Ginsberg’s failure to call Matthews to testify.  Among other things, the State contends that Ginsberg may have reasonably concluded that Matthews would not be a credible witness.  However, Ginsberg did not testify regarding Matthews' purported lack of credibility at the evidentiary hearing.  Also, the State failed to present any other evidence at the evidentiary hearing that provided a "reasonable explanation" for Ginsberg's failure to call Matthews.  As our review is limited to the record before the trial court at the time of the evidentiary hearing, the State’s arguments are without merit. See 
Strickland
, 466 U.S. at 695, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068-69. 

The State further contends that even if Ginsberg’s performance was deficient, defendant cannot satisfy the second prong of 
Strickland, 
which requires that defendant demonstrate prejudice.  The State argues that Matthews' testimony would not have affected the outcome of the trial where the prosecution presented three witnesses who disputed her claim that she did not get off the bus early.  The State further argues that the impact, if any, from Matthews' attempt to contradict the consistent testimony of these three trial witnesses would have been minimal.  Thus, defendant cannot establish that the outcome of the trial would have been different.

The State overstates both the prosecution’s case as well as the defendant’s burden under 
Strickland
.  The defendant need only establish that “'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' ” 
Haynes
, No. 85180, slip op. at 26, quoting 
Strickland
, 466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068.  To make this finding, the court must consider the totality of the evidence before the court. 
Strickland
, 466 U.S. at 695, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068-69. 

Our review of the record reveals that the evidence favoring a finding of guilty, while sufficient to convict in the absence of Matthews' testimony, was rife with infirmities.  First, we note that each of the three occurrence witnesses called by the State attended South Central High School, a special school designed for students exhibiting psychological dysfunction.  The remaining State witnesses simply recounted what L.R. told them about the alleged rape. 

  Second, the testimony presented by the defendant's medical witnesses does, at the least, cast some doubt on L.R.'s credibility.  It was undisputed that L.R. had suffered from severe psychosis within a year of the alleged rape.  Testimony was given regarding L.R.'s past hallucinations of a sexual nature, including penile penetration.  L.R. also stated that she would hear voices inside her head at night if she failed to take her medicine on time.   

L.R.'s testimony was also contradictory.  When asked whether defendant attempted to have her perform oral sex, L.R. altered the chronology of events to which she had already testified, while also confusing her answers.  L.R. also testified that, when Matthews asked to be dropped off early, defendant said "go ahead, it's Friday."  Despite this assertion, the calendar and the testimony of the other witnesses indicated that October 15, 1991, fell on a Tuesday.  Further, L.R. testified that Richie was not present at her house the evening she recounted the rape to her mother and South Central faculty members.  However, Richie later testified that both he and Eric were present during this meeting at L.R.'s house and that he heard the account of the rape given by L.R. at that time. 

The record also indicates that  L.R. misinformed her teachers and counselors about when the rape occurred.  According to Fefee, L.R.'s initial story was that both rapes occurred in the summer.  Later that evening at L.R.'s home, however, L.R. agreed with another student who said that one of the rapes had just occurred on October 15.  On cross-examination, L.R. denied that she ever told her teachers that both rapes occurred during the summer.  

It should also be noted that Richie’s testimony does not fully comport with the testimony of L.R. or Officer Oden.  Also, contrary to the State's assertions, Richie’s testimony does not corroborate L.R’s statement that Matthews left the bus early.  Richie testified that he exited the bus first on October 15, 1991.  Therefore, Richie could not have any personal knowledge as to whether Matthews got off  the bus early.  Richie also testified that he followed the bus to an alley.  However, Richie admitted that he was never close enough to see what was happening on the bus or to see if L.R. and defendant were on the bus.  Significantly, Richie did not seek help for L.R. while the bus was parked in the alley.  Despite the fact that he suspected something was amiss and had already been told that L.R. was raped by the bus driver in the summertime, Richie just stared at the parked bus for 30 minutes.  Richie also failed to report this incident to L.R.’s mother, his own family or any other person on the day he alleged it occurred.  

Also casting doubt on Richie's veracity is the fact that his description of the alley conflicts with the description given by L.R. and Officer Oden.  The alley identified by L.R. was lined with arching trees.  However, Richie testified that there were no trees around or near the alley where he saw the bus parked.  Moreover, Richie testified that the bus was traveling east on 46th Street from Drexel Boulevard toward Evans Avenue before it pulled into the alley.  To the contrary, Officer Oden testified that the alley identified by L.R. was located at 4329 S. Champlain Avenue, which is actually west of Drexel Boulevard.

The parties' stipulations regarding what facts Eric would testify to constituted the only corroboration for L.R.’s testimony that defendant dropped Matthews off early and altered the bus route.  However, Eric's testimony did not corroborate L.R.'s testimony that she was in fact raped by defendant.  Also, Eric's testimony that the school bus turned east off Drexel Boulevard toward Evans Avenue prior to pulling into the alley conflicted with the location of the alley identified by L.R., which was west of Drexel  Boulevard.   We also  note that Eric was not present for the trial court to assess his credibility.  Furthermore, Eric's testimony was not tested for inconsistences through cross-examination by defense counsel. 

In light of the inconsistent, contradictory testimony presented at trial, along with the clearly questionable credibility of the State's occurrence witnesses, we cannot say that evidence of defendant's guilt in this case was overwhelming.  As such, we believe that the absence of Matthews' alibi testimony at trial is sufficient to undermine confidence in defendant's conviction.  Further, Matthews, a then 69-year-old bus attendant, stated unequivocally in her affidavit that she did not get off the bus before L.R. and that L.R. was never alone on the bus with defendant.  If believed, Matthews' testimony would have established that the October 15, 1991, rape could not have occurred.  Accordingly, we conclude that, but for Ginsberg's unprofessional errors, there is a reasonable probability that the result of defendant's trial would have been different.  We therefore hold that the trial court's denial of defendant's post-conviction petition was manifestly erroneous.

II. CONCLUSION

For the foregoing reasons, the judgment of the circuit court of Cook County is reversed and the cause is remanded for a new trial.  In light of our disposition, we do not address the alternative arguments raised by defendant in his appeal.

Reversed and remanded.

TULLY and GALLAGHER, JJ., concur.  

FOOTNOTES
1:    
 We have jurisdiction under Supreme Court Rule 651(a).  134 Ill. 2d R. 651.  

2:     
 
Evidence was later presented at trial that October 15, 1991, was actually a Tuesday.

3:   
Antoinette Fefee, a clinical supervisor at South Central, later testified that L.R. initially reported that defendant had raped her two times during summer school but that L.R. later agreed with another student that one of the rapes had occurred on October 15, 1991.