2021 IL App (1st) 191357-U

No. 1-19-1357

December 30, 2021

First Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court |
| | ) | of Cook County, Illinois |
| Plaintiff-Appellee, | ) | |
| | ) | No. 01 CR 5556 |
| v. | ) | |
| ANTHONY POWELL | ) | The Honorable |
| | ) | Alfredo Maldonado |
| Defendant-Appellant. | ) | Judge Presiding |
| | ) | |

JUSTICE WALKER delivered the judgment of the court, with opinion.
Presiding Justice Hyman and Justice Coghlan concurred in the judgment and opinion.

**ORDER**

   Held: Where defense counsel explained that he decided not to contact two witnesses listed on police reports because the reports indicated the witnesses had no information useful for the defense, the defendant knew the witnesses and did not suggest contacting them, and the witnesses, who knew of the charges and the trial, never tried to contact counsel, the trial court's finding that the defendant failed to show he received ineffective assistance of counsel was not manifestly erroneous.

¶ 1    A jury found Anthony Powell guilty of murdering Mitchell Dotson. Powell filed a postconviction petition arguing that he received ineffective assistance when his attorney failed to interview two witnesses listed in police reports. The trial court held an evidentiary hearing on the

petition and found that Powell failed to show his attorney's conduct was short of expected professional standards of competent counsel. We find that trial counsel adequately explained his decision not to interview the two witnesses, and therefore, we hold that the trial court's decision is not contrary to the manifest weight of the evidence. We affirm the denial of the postconviction petition.

¶ 2                                          I. BACKGROUND

¶ 3     The parties agree on the events that led to the death of Dotson. Dotson and his gang, the Mafia Insane Vice Lord Nation, sold drugs on street corners. When Dotson went to prison, Powell and his gang, the Four Corner Hustlers, took over drug sales at some of Dotson's locations, including the corner of Potomac Avenue and Lavergne Avenue.

¶ 4     Dotson left prison in 2000. On July 11, 2000, Dotson drove to the corner of Potomac and Lavergne, where Powell was selling drugs. Dotson threatened to hurt Powell if Powell did not stop selling drugs at the location. Powell left but came to the same corner the next day to sell drugs, and Dotson drove by at approximately noon and again told Powell to leave.

¶ 5     On July 12, 2000, Terrell Pearson, a member of the Four Corner Hustlers, left his son in the care of a babysitter who lived near the corner of North Avenue and Lockwood Avenue. Pearson and his child's mother, Samantha Miller, picked up the child from the babysitter after 10 p.m. When they came to the street, they saw Dotson and other Vice Lords standing by Pearson's car. Pearson retreated to the babysitter's apartment and called for help. Powell and other Four Corner Hustlers, including Anton Brown, responded to the call by retrieving guns and heading to the babysitter's apartment. Powell helped escort Pearson, Miller, and their child to Pearson's car. While the other Vice Lords backed off, Dotson walked up to Powell. Powell shot Dotson, and

when Dotson fell Powell continued shooting until his gun jammed. Police did not find a gun near Dotson.

¶ 6                                      A. Trial

¶ 7     Powell's attorney asked the jury to find Powell guilty of second degree murder, relying primarily on Powell's own testimony. Powell testified that on July 11 and July 12, 2000, when Dotson saw Powell selling drugs at Potomac and Lavergne, Dotson showed Powell a gun. At the confrontation that occurred after 10pm on July 12, Dotson reached towards his belt as he approached Powell. Powell did not wait to see whether Dotson had his gun. Powell, fearing for his life, shot Dotson before Dotson could draw a gun. Powell admitted he did not see any gun on Dotson at the time of the shooting.

¶ 8     James Taylor, a friend of Dotson, testified he saw Powell shoot Dotson. He did not see Dotson with a gun, and he did not see Dotson reach towards his waist or his pockets before Powell fired the fatal shots. Miller admitted that she signed a statement at the police station alleging that she saw the shooting, and she did not see Dotson with a gun or reach towards his waist or pockets. She testified she signed the statement because she did not want police to take her child away from her, but that she did not see the shooting. When she heard gunshots, she ran to a friend's home nearby.

¶ 9     The prosecution played for the jury a videorecording of a statement Powell made to police during the investigation. The statement largely matched Powell's trial testimony, except in the recording Powell did not say Dotson showed Powell his gun on July 11 and 12 at the corner of Potomac and Lavergne, and Powell did not say he feared for his life when he shot Dotson.

¶ 10    The jury found Powell guilty of first degree murder. The trial court sentenced him to 50 years in prison. The appellate court affirmed the conviction and sentence. *People v. Powell*, 355 Ill. App. 3d 124 (2004)

¶ 11                              B. Postconviction Proceedings

¶ 12    Powell filed a postconviction petition, and an attorney filed a supplemental petition in 2013. In 2018, the trial court held an evidentiary hearing on the postconviction petition. Powell argued that his trial attorney provided ineffective assistance by failing to interview Pearson and Brown, who were listed in police reports of the shooting.

¶ 13    Pearson testified that he had known Powell since childhood. Dotson and some other Vice Lords beat up a friend of Pearson in June 2000, just a month before Dotson's death. At the confrontation on July 12, Pearson saw Dotson draw a dark revolver from his waistband before Powell shot him. Pearson admitted he refused to answer police officers' questions about the shooting. He explained that police threatened to charge him with murder if he spoke against their account of the shooting. If Powell's attorney had called Pearson as a witness, he would have testified to what he saw.

¶ 14    Brown testified that he had known Powell well for years. At the confrontation on July 12, Brown saw Dotson reach towards his waistband "as if to grab a gun," right before Powell shot Dotson.

¶ 15    Defendant's trial attorney, Richard Kloak, testified he read the police reports, including the notes about Pearson and Brown. The reports indicated Pearson did not see the shooting. According to Kloak, Pearson was a cousin of Powell, Powell was in touch with Pearson, and Powell knew how to have someone contact Kloak. The police report recorded that Brown, like Pearson and

Powell, did not stay at the scene of the shooting to talk to police, and when police later interviewed Brown, he gave no information useful to either the prosecution or the defense. Kloak reasoned that if either Pearson or Brown could give useful testimony, they had close relationships with Powell and knew how to contact Powell and Kloak. Hence, Kloak did not seek them out.

¶ 16 The trial court held that the decision not to contact Pearson and Brown resulted from the exercise of reasonable professional judgment. The court further found that the testimony of Pearson and Brown would not have affected the outcome of Powell's trial because their testimony lacked credibility and the State could impeach them with statements they made to police. The court denied the postconviction petition. Powell now appeals.

¶ 17                                    II. ANALYSIS

¶ 18 On appeal, Powell contends Kloak provided ineffective assistance when he failed to interview Pearson and Brown. For his claim, Powell must show Kloak's representation fell below an objective standard of reasonableness, and "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *People v. Haynes*, 192 Ill.2d 437, 473 (2000). To prevail, Powell must overcome the strong presumption that the challenged action or inaction of trial counsel was the product of sound trial strategy and not of counsel's incompetence. *Id*. The Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq*. (West 2018)) entitles petitioners to a reasonable level of assistance from counsel. *People v. Perkins*, 229 Ill. 2d 34, 42 (2007).

¶ 19 Because the court held an evidentiary hearing on the postconviction petition, this court will not disturb the decision to grant or deny the petition unless the court committed manifest error. See *People v. King*, 316 Ill.App.3d 901, 913, 250 Ill.Dec. 340, 738 N.E.2d 556 (2000).

¶ 20    Kloak admitted that he saw the names of Pearson and Brown in the police reports, but he did not contact them. "The failure to interview witnesses may indicate actual incompetence (citations), particularly when the witnesses are known to trial counsel and their testimony may be exonerating." *People v. Williams*, 147 Ill.2d 173, 245 (1991). Counsel has a duty to make reasonable investigations or to make a reasonable decision which makes investigations unnecessary. The reasonableness of the decision to not investigate is assessed applying deference to counsel's judgment. *People v. Harris*, 129 Ill.2d 123, 158 (1989). Reasonableness can be assessed by considering the defendant's statements, actions, and information supplied by the defendant, and whether counsel has reason to believe that pursuing certain investigations would be fruitless. *Hoffman v. Cain,* 752 F.3d 430, 440 (5th Cir. 2014). Resources are often limited, and trial counsel must eventually shift from pretrial investigation to trial preparation. *Campbell v. Reardon*, 780 F.3d 752, 765 (7th Cir. 2015).

¶ 21    The police reports indicated Pearson and Brown would not be helpful. Although Powell knew Pearson and Brown were both at the scene of the shooting, he did not suggest to Kloak that either one would provide useful testimony. Additionally, Pearson and Brown knew Powell for years and knew about Powell's trial, but never attempted to contact Kloak. Therefore, Kloak reasonably inferred that neither Pearson nor Brown could help Powell at trial. We find that Powell has not overcome the presumption that sound strategy led to Kloak's decision not to contact Pearson and Brown, and the trial court's ruling on the postconviction petition is not manifestly erroneous.

¶ 22                                    III. CONCLUSION

¶ 23    The trial court found Powell did not show Kloak provided ineffective assistance of counsel in deciding not to contact two witnesses who, according to police reports, would contribute no valuable testimony, where the two witnesses and Powell never told Kloak their testimony could help the defense.  We find that the trial court's decision to deny the postconviction petition following an evidentiary hearing was not manifestly erroneous.  Accordingly, we affirm the trial court's judgment.

¶ 24    Affirmed.