2023 IL App (1st) 221188-U

No. 1-22-1188

September 22, 2023

Sixth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

---

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

---

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County, Illinois, |
| | ) | |
| v. | ) | No. 01 CR 5556 |
| | ) | |
| ANTHONY POWELL, | ) | Honorable |
| | ) | Alfredo Maldonado |
| Defendant-Appellant. | ) | Judge Presiding. |

---

JUSTICE C.A. WALKER delivered the judgment of the court.
Justices Hyman and Tailor concurred in the judgment.

## ORDER

¶ 1   *Held*:  The trial court's sentence is affirmed where the resentencing judge considered youth-related mitigating factors and reduced the sentence by 15 years.

¶ 2   Following a jury trial, defendant-appellant, Anthony Powell, was found guilty of first-degree murder and sentenced to 50 years in prison. In 2019, Powell filed a successive postconviction petition challenging the constitutionality of his sentence pursuant to *Miller v. Alabama*, 567 U.S. 460 (2012). The petition advanced to the second stage, where the court granted

Powell's petition and vacated the sentence. At the new sentencing hearing, the trial judge imposed a 35-year sentence. Subsequently, Powell filed a motion to reconsider which the court denied. On appeal, Powell argues that the 35-year sentence is excessive for an offense that he committed when he was 16 years old, and the sentencing judge failed to consider the extensive mitigation evidence. We find that the sentencing judge did not abuse his discretion in resentencing Powell. For the following reasons, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4      Powell was charged with the murder of Mitchell Dotson. Dotson and his gang, the Mafia Insane Vice Lord Nation, sold drugs on street corners. When Dotson went to prison, Powell and his gang, the Four Corner Hustlers, took over drug sales at some of Dotson's locations, including the corner of Potomac Avenue and Lavergne Avenue.

¶ 5      Dotson was released from prison in 2000. On July 11, 2000, Dotson drove to the corner of Potomac and Lavergne, where Powell was selling drugs. Dotson threatened to hurt Powell if Powell did not stop selling drugs at the location. On July 12, 2000, Terrell Pearson, a member of the Four Corner Hustlers called Powell for help when he saw Dotson and other Vice Lords standing by his car. When Powell and members of the Four Corner Hustlers arrived, the members of the Vice Lords backed off except for Dotson, who walked up to Powell. Powell shot and killed Dotson. Police did not find a gun near Dotson.

¶ 6      Powell was found guilty of first-degree murder and sentenced to 50 years in prison.  On direct appeal, this court affirmed his conviction and sentence. *People v. Powell*, 355 Ill. App. 3d 124, 145 (2004).

¶ 7      Powell filed a postconviction petition pursuant to the Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2018)). In 2018, the trial court held an evidentiary hearing regarding

the petition. Powell argued in his petition that trial counsel provided ineffective assistance of counsel by failing to interview two witnesses. The trial court denied Powell's petition, holding that counsel's decision not to contact the witnesses was the result of reasonable professional judgment because the alleged witnesses lacked credibility, and the State could impeach them with statements they made to the police. Powell appealed, and this court affirmed the trial court's judgment. *People v. Powell*, 2021 IL App (1st) 191357-U.

¶ 8    Powell filed a successive postconviction petition on May 16, 2019. Powell argued that his aggregate sentence of 50 years in prison violated the eighth amendment and the proportionate penalties clause of the Illinois Constitution. The trial court found that Powell's 50-year sentence violated the eighth amendment, vacated Powell's sentence, and granted a new sentencing hearing.

¶ 9    On December 7, 2021, the resentencing hearing was held. The parties stipulated Powell's discipline records from the Illinois Department of Corrections. Powell's records included: 1) an infraction on Aprill 11, 2011, for fighting in a dangerous disturbance; 2) an infraction on August 22, 2011, for unauthorized organization activity and abuse of privileges; 3) an infraction in September of 2013, for possessing drug paraphernalia; and 4) an infraction on September 6, 2017, for unauthorized organization activity.

¶ 10    Dr. James Garbarino, a professor of developmental psychology at Loyola University and Cornell University, testified about the evaluations he performed on Powell. Dr. Garbarino evaluated Powell using the Adverse Childhood Experience Scale (ACE). The ACE test is a series of ten questions used to predict adverse physical and psychological outcomes. Dr. Garbarino found that Powell's responses to the test demonstrated that his family and home environment made him more susceptible to substance abuse, depression, suicidal behavior, and violent behavior. Dr.

Garbarino opined that the judge who sentenced Powell erred in finding that the severity of Powell's actions implied maturity.

¶ 11    On cross-examination, Dr. Garbarino revealed that his video call with Powell only lasted one hour. Dr. Garbarino also stated he could not verify that Powell completed the ACE test independently, but he used the presentence investigation report (PSI) to verify Powell's responses.

¶ 12    In allocution, Powell stated:

"The man that I am now is a grown man, a man that has matured tremendously in such aspect mentally, spiritually and emotionally. I am a man now that has been corrected, that have direction, also have self-control, self-improvement, self-acknowledgment and self-awareness because the things I did then I know now affect others and I am very remorseful for what I have done and the hurt and pain that I have caused to the Dotson family and I am truly sorry for my indiscretion, my wrongdoing."

¶ 13    Prior to sentencing, the judge stated:

"The sentencing range is 20 to 60 years in the murder but of course we're all familiar that with the Miller bright line anything over 40 years, four-zero, anything over 40 years would require -- well, there's a -- there is a question because under Jones versus Mississippi the issue of whether the court expressly has to make a finding of incorrigibility, there's some doubt here, I -- it really doesn't make a difference in this situation because in looking at all the sentencing factors here, the *Miller* sentencing factors take into account his age and the level of maturity at the time of the offense, the cognitive impairments that all juveniles have that -- which is what Dr. Garbarino testified to and in light of the family situation in which was

-- wasn't unique to Mr. Powell but pretty much as Dr. Garbarino testified, something that was endemic throughout his -- Mr. Powell's community of very -- not to denigrate it or minimize but very rough unfortunate childhood.

\*\*\*

Also considering his potential for rehabilitation, I do note that there really wasn't much use of rehabilitative services while he was incarcerated. I know the defense had made an argument as to why circumstances of the offense. This was not self-defense. It was a very -- it was cold blooded. It was a deliberate act here and Mr. Powell shooting and murdering Mitchell Dotson."

¶ 14 The resentencing judge sentenced Powell to 35 years in prison. Powell subsequently filed a motion to reconsider, which was denied. Powell now appeals.

¶ 15                                        II. JURISDICTION

¶ 16 Powell was sentenced on December 7, 2021. Powell's motion to reconsider was denied on July 13, 2022, and Powell filed a timely notice of appeal on July 28, 2022. This court has jurisdiction pursuant to article VI, section 6, of the Illinois Constitution (Ill. Const. 1970, art VI, § 6), and Supreme Court Rules 603 and 606, governing appeals from final judgments of conviction in criminal cases (Ill. S. Ct. R. 603 (eff. Feb. 6, 2013); R. 606 (eff. Mar. 12, 2021)).

¶ 17                                        III. ANALYSIS

¶ 18 On appeal, Powell argues the resentencing judge failed to consider the mitigation evidence provided by Dr. Garbarino and improperly focused on the offense. Specifically, Powell argues that (1) the resentencing judge did not consider youth-related mitigating factors, and (2) ignored the extensive evidence regarding Powell's prospect for rehabilitation. The State counters by asserting

that the record demonstrates the court properly considered Powell's rehabilitative potential and youth-related mitigating factors.

¶ 19    The Illinois Constitution requires that penalties be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship. Ill. Const. 1970, art. I, § 11; *People v. Center*, 198 Ill. App. 3d 1025, 1032-33 (1990). The trial court has broad discretionary powers in imposing a sentence. *People v. Stacey*, 193 Ill. 2d 203, 209-10 (2000). A sentencing determination will not be disturbed absent an abuse of discretion. *Id.* Sentences that fall within the permissible statutory range may be an abuse of discretion where they are "greatly at variance with the spirit and purpose of the law, or manifestly disproportionate to the nature of the offense." *Id.* at 210. An excessive sentence entails a sentence within the statutory range but disregards a defendant's rehabilitative potential. *People v. Daly*, 2014 IL App (4th) 140624, ¶ 25 (citing *People v. Perruquet*, 68 Ill. 2d 149, 154-55 (1977)).

¶ 20    In *Miller*, the Supreme Court held that the eighth amendment precluded a mandatory life sentence without parole for a juvenile offender who has committed homicide. The Court later held that *Miller* applied retroactively in *Montgomery v. Louisiana*, 577 U.S. 190, 206, 212, 136 S. Ct. 718, 732, 736 (2016). In *People v. Holman*, 2017 IL 120655, ¶ 38, our supreme court ruled that life sentences imposed on juvenile offenders, mandatory or discretionary, are disproportionate and violate the eighth amendment, unless the sentencing court considers youth and its attendant characteristics. In *People v. Buffer*, 2019 IL 122327, ¶¶ 40-41, our supreme court held that a prison term over 40 years imposed on a juvenile constitutes a *de facto* life sentence and violates the eighth amendment. To prevail on a claim that a juvenile's life sentence violated the eighth amendment, a defendant must show both that (1) he was "subject to a life sentence, mandatory or discretionary, natural, or *de facto*," and (2) "the sentencing court failed to consider youth and its attendant

characteristics." *Id.* ¶ 27. Post-*Miller*, our legislature enacted legislation requiring the trial court to consider *Miller* factors, including:

"(1) the person's age, impetuosity, and level of maturity at the time of the offense, including the ability to consider risks and consequences of behavior, and the presence of cognitive or developmental disability, or both, if any;

(2) whether the person was subjected to outside pressure, including peer pressure, familial pressure, or negative influences;

(3) the person's family, home environment, educational and social background, including any history of parental neglect, physical abuse, or other childhood trauma;

(4) the person's potential for rehabilitation or evidence of rehabilitation, or both;

(5) the circumstances of the offense;

(6) the person's degree of participation and specific role in the offense, including the level of planning by the defendant before the offense;

(7) whether the person was able to meaningfully participate in his or her defense;

(8) the person's prior juvenile or criminal history; and

(9) any other information the court finds relevant and reliable, including an expression of remorse, if appropriate. However, if the person, on advice of counsel chooses not to make a statement, the court shall not consider a lack of an expression of remorse as an aggravating factor." 730 ILCS 5/5-4.5-105(a) (West 2018).

¶ 21    Here, after reviewing the relevant sentencing factors, the resentencing judge sentenced Powell to 35 years. Powell argues the resentencing court failed to properly consider Powell's rehabilitative potential and youth-associated characteristics. In determining whether the sentencing court properly considered these factors, this court must consider the entire record rather than "a few words or statements" made by the trial court. *People v. Ward*, 113 Ill. 2d 516, 526 (1986).

¶ 22    Powell cites *People v. Hill*, 2022 IL App (1st) 171739-B and *People v. McKinley*, 2020 IL App (1st) 191907 to support his claims. In *Hill*, the defendant was convicted of two counts of first-degree murder and one count of attempted first-degree murder, which he committed at the age of 15. *Hill,* 2022 IL App (1st) 171739-B, ¶ 1. The defendant was sentenced to mandatory life in prison to run consecutively with a 30-year sentence for attempted murder. *Id.* The defendant subsequently filed a postconviction petition, challenging *inter alia*, his life sentence as unconstitutional. The parties agreed that the defendant's sentence violated *Miller. Id.*

¶ 23    At the resentencing hearing, two corrections officers testified on the defendant's behalf. *Id.* ¶ 19. The officers testified that the defendant was a "model inmate" and that he maintained multiple jobs that required "the trust of officers." *Id.* The trial court also described the defendant's conduct as exemplary and "as good as anyone else's that I've ever seen that has been in that long, quite frankly.'" *Id.* ¶ 20. The resentencing judge sentenced the defendant to 54 years, and the defendant appealed, arguing his new sentence still violated *Miller. Id*. ¶ 1. This court agreed and remanded the matter for a new resentencing hearing, finding that the trial court minimized a mountain of evidence explaining the defendant's "youth and circumstances on his criminal conduct and further explaining his ability as an adult to conform his conduct with the law." *Id.* ¶ 4.

¶ 24    In *McKinley*, the defendant shot and killed a man at the behest of his friend when he was 16 and was sentenced to 100 years in prison. *McKinley,* 2020 IL App (1st) 191907. After a failed

direct appeal and postconviction proceeding, the Seventh Circuit ruled with instructions to the district court to stay the *habeas* proceedings and allow the defendant to pursue resentencing. *McKinley v. Butler*, 809 F.3d 908 (7th Cir. 2016). Defendant filed for postconviction relief under the Act, which was granted. *McKinley,* 2020 IL App (1st) 191907, ¶ 21.

¶ 25    During resentencing in *McKinley*, an expert in the field of developmental psychology testified to the defendant's mental capacity and susceptibility to outside influences. *Id.* ¶¶ 24-27. Correctional officers testified to the defendant's conduct as a cell house worker and stated that there were never issues with the defendant. *Id.* ¶ 29. Two professors also testified about the defendant's exceptional performance in prison education programs. *Id.* ¶¶ 33-39.

¶ 26    On appeal, this court found that the sentencing court abused its discretion by sentencing the defendant to 39 years in prison. *Id.* ¶ 1. The court reasoned that the sentencing court disregarded evidence of the defendant's extensive rehabilitation and improperly considered certain sentencing factors. *Id.* ¶ 78. The court also added that simply hearing evidence on all the *Miller* factors does not mean there was no abuse of discretion. *Id* ¶ 86. This court reduced the defendant's sentence to 25 years in prison, followed by three years of mandatory supervised release. *Id.* ¶ 91.

¶ 27    Unlike the defendants in *Hill* and *McKinley*, the record does not contain ample evidence of Powell's rehabilitative potential. Powell does not have an exemplary record while incarcerated. In fact, the record reflects Powell had several infractions while incarcerated. Furthermore, Powell did not have any witnesses to his rehabilitative potential; instead, he solely relies on the findings of Dr. Garbarino, which the resentencing court referred to when it made its findings. The record demonstrates that the resentencing court considered Powell's rehabilitative potential. The judge stated, "considering his potential for rehabilitation, I do note that there really wasn't much use of rehabilitative services while he was incarcerated." "A defendant's rehabilitative potential * * * is

not entitled to greater weight than the seriousness of the offense." *People v. Coleman,* 166 Ill. 2d 247, 261 (1995). As a result, we find the trial court properly assessed Powell's potential for rehabilitation.

¶ 28     Powell also contends that the resentencing judge did not properly consider his youth and associated characteristics. Here, the resentencing judge considered the evidence and reviewed the *Miller* factors codified by 730 ILCS 5/5-4.5-105. The judge stated, "the *Miller* sentencing factors take into account his age and the level of maturity at the time of the offense."  The judge found that Powell experienced a "very rough unfortunate childhood," but his experience was endemic throughout his community. The resentencing judge acknowledged Dotson and Powell were members of rival gangs, and that Powell did not murder Dotson in self-defense. Hence, the record before us negates Powell's argument that the court did not consider youth-related factors during resentencing.

¶ 29     In imposing Powell's sentence, the court noted Powell's youth, background, gang membership, and rehabilitative potential. Absent any evidence to the contrary, it is presumed the court considered those factors. *People v. Jones*, 2019 IL App (1st) 170478, ¶ 54. Further, the most important factor in sentencing is the seriousness of the offense, and the court is not required to give greater weight to mitigating factors. *People v. Alexander*, 239 Ill. 2d 205, 214 (2010). The presence of mitigating factors does not require the court to impose a minimum term. *Id.*

¶ 30     In our review of the record, the trial court properly considered the sentencing factors. We will not substitute our judgment for that of the trial court in relation to the weight afforded to each sentencing factor. *Id.* at 213. Hence, the trial court did not abuse its discretion by sentencing Powell to 35 years in prison.

¶ 31                                        IV. CONCLUSION

¶ 32 For the forgoing reasons, we affirm the judgment of the trial court.

¶ 33 Affirmed.